## DURFEE v. DORR.

### Opinion delivered April 17, 1916.

1. HOSPITALS—DUTY TO PATIENTS—LIABILITY FOR NEGLIGENCE.—The keeper of a hospital is liable for damages if he fails to perform some duty which he owes to the patient and the patient is injured as a result of this failure.

2. HOSPITALS—DUTY OF CARE TO PATIENT.—It is the duty of the keeper of a hospital to give to the patients who place themselves in his care, reasonable care and attention, and to have that knowledge of the necessities of the patients' case, which would result from this care and attention, and from the possession of ordinary skill in his treatment.

3. HOSPITALS—CARE OF PATIENT—NEGLIGENCE—QUESTION FOR JURY.— Where plaintiff's intestate entered defendants' hospital for treatment, and being left unattended, wandered from his room, sustaining a fall, which was followed by his death, held, under the evidence, it was error for the trial court to withdraw the case from the jury, and instruct a verdict for the defendants.

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; reversed.

*Hal L. Norwood* and *W. K. Ruddell*, for appellant.

1. It was error to direct a verdict for the defendants. Where there is any evidence tending to establish an issue, it is error to take the case from the jury. 63 Ark. 94; 89 *Id.* 589; 77 *Id.* 556; 89 *Id.* 368; 33 *Id.* 350; 36 *Id.* 451; 39 *Id.* 413; 105 *Id.* 526; 35 *Id.* 147.

2. In reviewing the action of the trial court in directing a verdict for defendant the testimony must be given its strongest probative force in favor of the plaintiff's cause of action. 76 Ark. 520; 71 *Id.* 445; 73 *Id.* 561.

3. The question as to whether defendants were negligent should have been submitted, under proper instructions to the jury for determination. L. R. A. 1915 D. 334; 77 Ark. 458; 64 *Id.* 535; 75 *Id.* 479; 80 *Id.* 190; 100 *Id.* 53; 98 *Id.* 413; 95 *Id.* 359; 92 *Id.* 502; 94 *Id.* 246; 97 *Id.* 347; 97 *Id.* 553. There was evidence of negligence. L. R. A. 1915 D. 334; 35 Ark. 602, 614.

4. A patient is admitted to a hospital conducted for private gain, under the admitted obligation that he shall receive such reasonable care and attention for his safety

as his mental and physical condition, if known, may require. 7 N. C. C. A. 82, 88; 148 N. W. 582; L. R. A. 1915 D. 334. This was a clear case of negligence.

5. Defendants were bailees of the patient, had exclusive and actual possession and control of him for hire, and they agreed to care for him. 101 Ark. 75, 82; 28 L. R. A. 716. Injuries to patients by doctors is something that does not usually happen where due care is used. 5 R. C. L. 77; 166 N. Y. 188; 82 Am. St. 630; 189 Ill. 430; 52 L. R. A. 930; 2 *Id.* 820, 823; 2 Enc. of Ev. 194. Whether defendants used due care or were negligent was a question for the jury. L. R. A. 1915 D. 334, 341.

*McCaleb & Reeder,* for appellees.

1. The burden was on appellant to prove that deceased was in a feverish and delirious condition and that defendants knew, or should have known that it was dangerous to leave him alone or unattended; that he fell from the porch to the ground and that the death was the proximate result of a fall and not of disease or natural causes. Plaintiff wholly failed to make proof of any of these facts and a verdict was properly directed.

2. The burden was on appellant to show that the injury resulting in death was produced by some wrongful or negligent act of defendants. 8 R. C. L., p. 857-8 and notes; 79 Ark. 608; 97 *Id.* 469. A patient is generally admitted to a hospital under an implied obligation that he shall receive such reasonable care and attention for his safety as his mental and physical condition, if known, may require. 148 N. W. 575; *Ib.* 582; 17 L. R. A. (N. S.) 1167; 14 *Id.* 784; 174 S. W. 409; 14 N. Y. S. 881; 39 N. Y. St. 98; 104 N. Y. 434; 84 N. Y. 455; 14 N. Y. S. 884-5. Here there is no evidence of negligence whatever. 63 W. Va. 84; 59 S. E. 943; 105 Ark. 161; 179 U. S. 658; 222 Mo. 488; 87 Ark. 217; 82 *Id.* 372; 18 S. W. 172; 87 Ark. 321; 70 S. W. 376; 105 N. W. 197; 79 N. W. 76; 93 S. W. 868; 79 Ark. 76. The burden was on appellant to show that the defendants' negligence was the proximate cause of death. 63 Atl. 234; 61 *Id.* 189; 54 S. E. 784; 51 *Id.* 851; 52 Atl. 864; 81

S. W. 1019; 34 S. E. 986; 14 Fed. 558; 47 N. E. 434; 7
A. & E. Enc. L. 381; 81 S. E. 579; 89 Atl. 170; 63 Fed.
400; 71 N. E. 509; 74 N. W. 1046; 125 Pac. 1044; 188 N. W.
70 and many others. The court properly directed a ver-
dict.

Smith, J. Appellant, in his own right and as ad-
ministrator of the estate of his deceased son, sued appel-
lees who, as partners under the firm and style of Dorr,
Gray & Johnston, are engaged in the practice of medicine
and, in connection with their practice, operate a sani-
tarium in the city of Batesville. Appellant's intestate
was his son, a young man twenty-five years old, who was
received by appellees as a patient on July 26, 1915. Ap-
pellees performed an operation for abscess of the liver
on their patient on Tuesday, and the patient died on the
following Saturday.

The complaint alleges that appellees accepted de-
ceased as a patient in their sanitarium and agreed to
furnish him nurse, board, room, and medical attention,
but the patient was left in the room by himself while in a
feverish, nervous, delirious, or unconscious condition and
that he "while in such condition walked out of the up-
stairs door to the sanitarium and fell over the banisters
and that he suffered from said fall and died from the
effects thereof. That the defendants were guilty of care-
lessness and negligence in not having some one to keep
watch or guard over the said Dolph Durfee (the patient)
while he was in such condition, and that the pain, suffer-
ing and death was due to the negligence of the defend-
ants."

Appellees demurred to the complaint and answered
denying any negligence. or that Dolph Durfee was in a
delirious condition, or that they had contracted to keep
a nurse in constant attendance or that it was customary
to do so, and, further answering. they alleged that the
said Dolph Durfee was dangerously and critically ill and
could have lived but a few hours at most. and that any in-
juries received in his fall. if he fell, could not have been
the proximate cause of his death.

At the conclusion of the evidence the court directed the jury to return a verdict in appellees' favor, and this appeal is duly prosecuted from the verdict so rendered.

We are required, therefore, to give the evidence its highest probative value in appellant's favor, and when we have done. so this evidence may be summarized as follows: Appellant placed his son in the sanitarium with the direction that he be given proper attention, and it was agreed that a fee of $50 should be paid for the operation and, that, in addition, $28 per week should be charged for the hospital fees and nurse. There was no agreement for any individual or special nurse. The operation was performed for abscess of the liver and an incision five inches long was made and a part of a rib removed, and the incision was sewed up except for drainage. No hope of recovery was held out, and the prognosis was that death would ensue. The city of Batesville was visited by an unusual flood in August, 1915, and as a result thereof the electric light plant had been out of commission and the entire city was in darkness except for such light as the moon afforded, but the night in question was within a few days of the full moon. A Mr. Hardy testified that he saw young Durfee lying on the ground in a white night-shirt directly under the upstairs hall door under a platform which was fourteen feet high and which was enclosed with banisters, which were two feet four inches high, but that the stairs and platform were entirely on the outside of the building and that Durfee was lying on a pile of weeds or grass which had been cut and raked there, and that his night-shirt was slightly damp. That witness and the night marshal took Durfee upstairs and found none of the doors fastened and all of the upstairs was dark and no one was in sight, and they saw nothing of a nurse until they had carried Durfee to his room, which was only ten feet from the platform and stairway. Witness' attention was attracted by the voice of Durfee, calling, "Come here." Durfee was interrogated as to how he came to be where he was found, but could give no explanation and answered that he did not

know. He walked a few steps after he had been assisted to his feet but was too weak to walk any distance and was carried to his room, he himself giving the information as to its location. A Mr. Ivey testified that he was at his hotel directly across the street from the sanitarium and that he was sitting in front of the hotel when he saw Hardy go to Durfee. That he had been there for possibly half or three quarters of an hour before Hardy came up and that he was in plain view of the stairs leading down from the sanitarium and that he saw no one on the stairs. He also testified that he saw no one fall from the platform. The undertaker who prepared the body for burial testified that there were skinned places on one knee and that the other knee was bandaged up and that there were other small scratches on the body, but no broken bones were found. There was other evidence as to the wounds and scratches found and that Durfee's hands were covered with earth and that the nurse washed them after he was placed back in bed. A physician testified that one might have fallen over the banisters on to the pile of hay below without leaving any external evidences of injuries and yet be seriously hurt internally, and that if an internal injury had been sustained the drawing up of the legs would be an indication of that fact, and it was shown that Durfee remained in that position after his return to his room when he was placed in his bed.

Appellees made no attempt to explain the occurrence but present the theory that Durfee walked down the stairs and out of the building and stumbled and fell over the pile of grass, which was shown to be from six to eight inches high.

We are, of course, not concerned about the plausibility of any theory which excuses or tends to excuse appellees of the charge of negligence. We have only to consider whether, under the evidence offered, the jury would have been warranted in finding that appellees were guilty of a breach of their duty to Durfee which resulted in his injury. As novel as the case appears to be there are a number of cases dealing with the duty of keepers of hos-

pitals to their patients. A number of these cases are cited in the notes to the following cases: *Phillips* v. *St. Louis & S. F. Rd. Co.,* 111 S. W. (Mo.) 109, 17 L. R. A. (N. S.) 1167; *Broz* v. *Omaha, M. & G. Hospital,* 148 N. W. 575, L. R. A. (N. S.) 1915, D. 334, and in other annotated cases there cited.

(1-2) The principle of law which controls is one which has been applied to many situations. The keeper of the hospital is liable for damages if he fails to perform some duty which he owes to the patient and the patient is injured as a result of this failure. The extent and character of this duty depends on the circumstances of each particular case. A jury would be warranted in assuming that a patient will need some care and attention from the very fact that he placed himself, or is placed, in the institution, and as appellees were in sole charge of this sanitarium, and Durfee was their patient, it was their duty to give him reasonable care and attention and to have that knowledge of the necessities of his case which would result from this care and attention and from the possession of ordinary skill in his treatment, there being no representation here on appellees' part of extraordinary skill. Appellant had not contracted for the services of a special or individual nurse, but that fact did not absolve appellees from the discharge of their duty to Durfee. It is true it would have been the duty of a special nurse to have given Durfee individual attention, but it was nevertheless the duty of appellees to see that Durfee had such attention as his condition apparently made necessary. In the case of *Harris* v. *Woman's Hospital,* 14 N. Y. Supp. 881, it is said:

"The hospital authorities, in making rules for night attendance by physicians, and for personal inspection, and watching of patients, in providing the force of night nurses, was bound only to the degree of care proportionate to the danger to be apprehended, judged by the condition of affairs before the happening of the accident."

(3) When this test has been applied to the facts of this case we can not say that a jury must necessarily

have found .that appellees did not fail in the discharge of their duty to young Durfee. Here was a man for whom, according to appellees, no hope of recovery was entertained or who, at any rate, was very desperately sick. The electric lights were off and the building was in darkness except for the light of the moon. Doors were unlocked and the patients apparently could go about as they pleased, or as their delirium carried them, without attracting the attention of the nurse or nurses who were supposed to be on duty, and the jury might have found, in the absence of explanation, from the manner in which the nurse who finally appeared on the scene was dressed, that she had been asleep. It is said, however, that according to the evidence of appellant, who saw his son during the afternoon before the injury, that the patient was then conscious and that he was conscious when found and that appellees were not chargeable with knowledge that the patient had become delirious. We think, however, the case presents the question for the jury to determine whether appellees discharged their duty to a patient who, according to their own contention, was *in extremis.* And for the error of the court in directing the verdict the judgment will be reversed and the cause remanded.

KIRBY, J., dissents.