LIFE & CASUALTY INS. CO. OF TENN. ET AL
*v.* FABER PADGETT ET UX

5-3921                                          407 S. W. 2d 728

Opinion delivered November 7, 1966

*George F. Hartje Jr.* and *Chowning, Mitchell, Hamilton & Burrow* and *Wright, Lindsey & Jennings*, for appellants.

*Guy H. Jones,* for appellees.

GEORGE ROSE SMITH, Justice. Faber Padgett and his

wife brought this action against the appellants, Life & Casualty Insurance Company of Tennessee and its agent, A. J. Skinner, to recover damages for injuries sustained when Skinner assaulted and beat Padgett with a heavy stick of wood. The jury's verdict, against both defendants, awarded Pagdett $15,000 as actual damages and $35,000 as punitive damages. Mrs. Padgett's cause of action is no longer in issue. The verdict was against her claim, and she has not appealed.

The first question is whether there is substantial evidence to support a finding that Skinner's tortious assault was committed in the prosecution of his employer's business.

The testimony of Mr. and Mrs. Padgett is so similar that we need not narrate it separately. On the afternoon of February 22, 1965, Skinner called at the Padgetts' home, a few miles from Conway, to collect premiums upon policies issued to the Padgetts. A dispute arose about whether the Padgetts were behind in the payment of one weekly premium. Skinner attempted to convince the couple, by his collection records, that there was a delinquency, but the Padgetts insisted that their payments were current. Finally Padgett said that he would write to the company and let them straighten it out. Skinner stamped the floor with anger and said: ''Well, you do that.''

Two or three times during the altercation Padgett asked Skinner to leave the house. Eventually Skinner did leave, closing the front screen door behind him as he stepped from the living room to the porch. At that point Padgett said: ''Don't come back to my house any more, Mr. Skinner. If that's the kind of a man you are, I don't want to have any dealings with you whatsoever.'' Skinner answered: ''There ain't nobody going to tell me what I can do and what I can't do.'' With that Skinner put down his satchel of papers, seized a heavy piece of firewood, re-entered the house, and struck Padgett

repeatedly about the head. That Padgett suffered serious injuries is not denied.

Counsel for Life & Casualty, in arguing that it was entitled to a directed verdict, cite several out-of-state decisions holding that an employer is not liable for his employee's intentional tort unless the nature of the employment is such as to make the use of force not unlikely. That principle seems really to be a liberalization of the law's bygone reluctance to hold a master liable for his servant's intentional torts. "There was once a great deal of conceptual and procedural difficulty in the way of holding the master for the deliberate and other willful wrongs of his servant in any case where such acts were not specifically commanded. . . . But all this is now a matter of history." Harper & James, Torts, § 26.9 (1956). Prosser takes much the same view, pointing out that the tendency of the modern cases is to hold the employer liable when, as here, the employee loses his temper and attacks the plaintiff during a quarrel arising out of the employment. Prosser, Torts, p. 478 (3d ed., 1964).

We think the law as it stands today is fairly summarized in the Restatement of Torts, where it is said that the master is subject to liability for his servant's intentional tort "if the act was not unexpectable in view of the duties of the servant." Restatement, Torts (2d), § 245 (1958). For a quarrel to arise in the course of an employee's attempt to collect money is certainly "not unexpectable." The jury might well have concluded that disputes over money matters are of such common occurrence that Skinner's conduct could not reasonably be said to be unforeseeable.

Our cases have not been out of step with the trend elsewhere. Not infrequently, in cases similar to this one, our main concern has been whether a dispute arising out of the employment was continuous up to the time of the intentional wrong. Such a case was *Bryeans* v. *Chicago Mill & Lbr. Co.*, 132 Ark. 282, 200 S. W. 1004 (1918),

where we said: "If the quarrel which was started by Breysacre in telling Bryeans that he would have to stop bothering the men in the shop was continuous to the time of the killing, and the killing grew out of such quarrel, then Breysacre at the time of the killing was acting in the scope of his employment. But if the quarrel which was thus started had ceased for an appreciable interval, however short, and was then renewed through the fault of Bryeans and the killing was the result of the quarrel thus renewed by Bryeans, then Breysacre at the time of the killing was not acting within the scope of his authority." We adhered to that view in *American Ry. Express Co.* v. *Mackley,* 148 Ark. 227, 230 S. W. 598 (1921), although there we found from the undisputed proof that there had been an interruption of the quarrel and that the employee renewed it the next day for personal reasons having nothing to do with his employment.

In the present case we think it clear that the jury might justifiably have found that the dispute arose out of Skinner's employment and continued to its conclusion without interruption. Indeed, that was the purport of Skinner's own testimony, who insisted that he acted merely in self-defense, Padgett being the aggressor.

The remaining questions have to do with the award of punitive damages. The appellants contend that under our holding in *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S. W. 2d 613 (1960), the plaintiffs waived their claim to punitive damages by suing two defendants and that the trial court erred in permitting the plaintiffs to introduce proof of the financial worth of both defendants.

In the *Dunaway* case we relied upon *Washington Gas Light Co.,* v. *Lansden,* 172 U. S. 534 (1898), for our conclusion that a plaintiff waives his right to punitive damages simply by asserting such a claim against two or more defendants. In fact, the *Lansden* case did not go that far. There the court merely approved the majority rule that one who sues two or more defendants for punitive damages waives his right to prove the financial con-

dition of any one of them. The court went on to say: "This rule does not prevent the recovery of punitive damages in all cases where several defendants are joined." See also Note, 15 Ark. L. Rev. 208 (1961).

We think the law was correctly stated in the *Lansden* case and that we misconstrued that holding in *Dunaway* v. *Troutt*. In the court below the Padgetts were permitted to prove that Life & Casualty had a net worth of about sixty-one million dollars and that Skinner had a net worth of about one thousand dollars. Under the *Lansden* case the admission of that evidence was reversible error.

Padgett's attorney argues that regardless of the rule in the case of independent tortfeasors proof of financial worth should be allowed when the defendants are employer and employee. That argument is not sound. The reason for the rule—that one defendant should not be punished on the basis of another defendant's wealth —applies just as well to employers and employees as to others not standing in that relation. Hence the rule, as one might expect, is applied in master-servant cases. *Chicago City Ry.* v. *Henry*, 62 Ill. 142 (1871); *Dawes* v. *Starrett*, 336 Mo. 879, 82 S. W. 2d 43 (1935); *McAllister* v. *Kimberly-Clark Co.*, 169 Wis. 473, 173 N. W. 216 (1919).

Does the erroneous admission of the testimony about the appellants' financial means affect the judgment for actual damages as well? In law cases two issues may be so interwoven that an error with respect to one requires a retrial of the whole case. *Mowery* v. *House*, 234 Ark. 878, 355 S. W. 2d 275 (1962). That is the situation here with reference to the compensatory and exemplary damages. It is hardly possible that the jury did not take each into consideration in fixing the other. Furthermore, the inadmissible proof of the defendants' worth may have influenced the jury in its assessment of compensatory damages. The only way in which we can with certainty protect the appellants from

358

the possibility of prejudice is to grant a new trial upon all issues.

Reversed.