MISSOURI PACIFIC RAILROAD COMPANY *v.*
ARKANSAS SHERIFF'S BOYS' RANCH et al

82-201                              655 S.W.2d 389

Supreme Court of Arkansas
Opinion delivered July 5, 1983
[Rehearing denied September 19, 1983.*]

---

*HICKMAN, J., would grant rehearing.

*Herschel H. Friday* and *Phillip Malcom,* for appellant.

*Tom Allen* and *Harkey, Walmsley, Belew & Blanken-ship,* for appellees.

ROBERT H. DUDLEY, Justice. Sixteen appellee land-owners filed four separate complaints against appellant, Missouri Pacific Railroad Company, and 29 of its employees. The appellees alleged they were entitled to recover compensatory and punitive damages for losses suffered as a result of fires caused by the negligent maintenance of both the right-of-way and the rolling stock of the appellant railroad and by the deliberate and intentional acts of the employees in throwing fusees or flares into combustible materials. Over appellant's objection, the four separate lawsuits were consolidated for trial.

Immediately prior to the trial the appellees nonsuited their punitive damage claims against each of the 29 employees but retained their punitive damage claim against the appellant railroad. During the trial a witness, who was not a party to these lawsuits, was allowed to testify that during settlement negotiations of a different claim an agent of the railroad stated that, in order to save money, the railroad has a policy of settling claims for fire damages rather than expending money to prevent the fires. The jury returned an award for compensatory damages totalling $6,100 for the four cases and an award for punitive damages totalling $800,000, or $200,000 for the appellees in each of the four

cases. We reverse. Jurisdiction is in this Court pursuant to Rule 29 (1) (o).

The appellant raises four points on appeal: two concern procedure prior to trial, one arises from an evidentiary ruling at trial, and one relates to the sufficiency of the evidence.

We first address appellant's two assigned points of error concerning procedure. Appellant contends that the trial court committed procedural error in consolidating the four lawsuits for trial. We agree.

ARCP Rule 42 (a) provides:

Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

An order of consolidation is a matter of discretion with the trial judge, and we will not reverse such an order except for abuse of that discretion.

The parties and facts in the four cases are as follows:

(1) One plaintiff sought compensatory and punitive damages against only the railroad for losses due to numerous fires alleged to have occurred over the past three years.

(2) Two different plaintiffs sought compensatory and punitive damages against the appellant and its train crew of 12 men for losses on their 270 acres of land due to fires on July 29, 1980 and August 27, 1980.

(3) Two different plaintiff property owners sought compensatory and punitive damages against appellant and its 15-man train crew, two of them who were also in

the crew in case number (2), for losses on their ten acres which occurred on August 29, 1980 and April 10, 1981.

(4) Nine different property owners sought compensation and punitive damages against appellant and its 16-man crew, five of whom were also crew members in case number (2) and two of whom were crew members in case number (3), for losses on their 417 acres of land, which occurred on April 20, 1980.

Prior to making his decision the trial court heard arguments from the attorneys at a pretrial conference. The court anticipated that the proof would show that all the complaints arose along a six mile stretch of right-of-way. The trial judge anticipated that the main thrust of the lawsuits would be for punitive damages and that all plaintiffs would attempt to prove that the appellant had found it less expensive to pay damage claims than to control vegetation on the right-of-way along this six mile stretch.

In analyzing the issue, we have divided the cases into their component parts — compensatory damages and punitive damages. It is the consolidation of claims for punitive damages which causes us to reverse. First, we note that the consolidation complies literally with Rule 42 (a) if the language therein is taken literally, as there were common issues of fact and law in the claims for punitive damages. The consolidation also saved judicial time, and we are fully aware that, upon retrial, each plaintiff will have to call nearly all of the same witnesses to establish the occurrence of most of the fires, that notice was given to the appellant, the condition of the right-of-way and rolling stock, and company policy. Even so, ordering the consolidation amounted to an abuse of discretion because of the resulting prejudice.

The consolidation of four cases placed undue emphasis on the need to penalize the tortfeasor. One of the objectives of punitive damages is to deter the tortfeasor from again engaging in similar conduct. *Holmes* v. *Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961). Therefore, the measure of punitive damages is unlike the measure of compensatory damages because punitive damages may validly amount to a

windfall for a plaintiff. *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972). However, a jury is more likely to spread a large verdict among a large number of plaintiffs than it would be to give one plaintiff the same large verdict. The windfall concept must not be expanded to this extent. It is in this manner that consolidation resulted in substantial prejudice to the appellant. Therefore, we conclude that the order of consolidation was an abuse of discretion and reverse on that issue.

Since the case must be retried, we discuss the other points which are raised on this appeal and will likely arise again upon retrial.

Appellant argues that the trial court committed error in first allowing the appellees to nonsuit their claims for punitive damages against the 29 employees and then allowing appellees to proceed on their claim for punitive damages against the railroad alone. Appellant relies on our case of *Curtis* v. *Partain,* 272 Ark. 400, 614 S.W.2d 671 (1981).

In the case of *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S.W.2d 613 (1960), the plaintiff brought a libel action against three parties. At trial, evidence of the financial worth of two of the defendants was introduced but there was no showing as to the third. The jury returned verdicts for compensatory and punitive damages against all three defendants. We reversed, holding that when a plaintiff sues more than one defendant he waives his right to punitive damages even though they are otherwise assessable. The case was an anomaly. Most jurisdictions at that time held that joint tortfeasors could be jointly and severally liable for punitive damages and it was only the evidence of the wealth of one or more of the joint tortfeasors which was inadmissible. *See* Giror, *Torts — Assessment of Punitive Damages Against Joint Tortfeasors,* 15 Ark. L. Rev. 208 (1961).

*Dunaway* was then specifically overruled in *Life & Casualty Ins. Co. of Tennessee* v. *Padgett,* 241 Ark. 353, 407 S.W.2d 728 (1966). There the plaintiff sued both a principal and an agent for compensatory and punitive damages. At

trial, the multi-million dollar financial worth of the principal was admitted along with proof of the $1,000 net worth of the agent. The jury returned a verdict for compensatory damages and $35,000 punitive damages against both defendants. In overruling *Dunaway*, we held that joint tortfeasors could be jointly and severally liable for punitive damages. We then reversed the case only on the basis that the proof of financial worth of two or more defendants is unfair in an action for punitive damages. We stated:

> Padgett's attorney argues that regardless of the rule in the case of independent tortfeasors proof of financial worth should be allowed when the defendants are employer and employee. That argument is not sound. The reason for the rule — that one defendant should not be punished on the basis of another defendant's wealth — applies just as well to employers and employees as to others not standing in that relation. Hence the rule, as one might expect, is applied in master-servant cases. *Chicago City Ry. Co. v. Henry,* 62 Ill. 142 (1871); *Dawes v. Starrett,* 336 Mo. 897, 82 S.W.2d 43 (1935); *McAllister v. Kimberly-Clark Co.,* 169 Wis. 473, 173 N.W. 216 (1919).

We have not changed our general rule that joint tortfeasors may be jointly and severally liable for punitive damages.

In *Curtis v. Partain,* 272 Ark. 400, 614 S.W.2d 671 (1981), the plaintiff brought a tort action against four parties who were the officers, directors and stockholders of a corporation. All four were alleged to have committed the same actionable wrongs. The prayer of the complaint was for compensatory and punitive damages against all four defendants. Prior to trial, the plaintiff sought to require each of the four defendants to produce documentation of his individual net worth. One defendant, Curtis, refused on the basis of our reasoning announced in *Life & Casualty Ins. Co. of Tennessee v. Padgett, supra.* The plaintiff then nonsuited three of the defendants from the claim for punitive damages, leaving only Curtis as a defendant in the punitive damage segment of the case. In *Curtis* we extended the philosophy of

*Padgett.* We decided that, where there are two or more defendants who are alleged to have committed *virtually identical* wrongs, it would be unfair to allow the plaintiff to seek compensatory damages from all of them but punitive damages from only one. In that very limited situation we felt that it was more important to protect one defendant from being unjustly punished than to possibly provide a plaintiff with windfall damages. We stated:

> It is argued that, here, only Curtis is sued since the complaint was amended to drop the claim for punitive damages against the other three officers. *We see the claim as virtually identical;* all are claimed to have defrauded the plaintiffs by causing the plaintiff's money to be diverted to petitioner's individual use. In Curtis's case the amended complaint only added the fact that Curtis caused tennis courts to be built on his property. That is not essentially different from the claims against the others. It is all a case of diversion. There is no claim that Curtis acted willfully or maliciously or indeed any different from the others. The claim is that all defendants joined in the scheme and personally benefited. [Emphasis added.]
>
> We conclude that the amendment is purely cosmetic. As it stands, only one of several persons is sought to be punished for wrongful conduct which is equally blamed on all four officers. Under these pleadings the plaintiffs have waived their claim for punitive damages.

Here, the first of the four cases is singly against the railroad. Thus, there was no valid *Curtis* issue to prevent the claim for punitive damages. However, the other three cases do present a *Curtis* issue which must be dealt with upon remand. The three original complaints make identical claims against all of the defendants. Obviously, pursuant to the *Curtis* doctrine, these plaintiffs should not have been allowed to seek punitive damages against the railroad alone on the basis of the original complaints. The appellees tacitly recognize this shortcoming in their original complaints by arguing that the pleadings were orally amended to allege

that the railroad was guilty of greater culpability than were the individual defendants. An examination of the record disclosed that, although evidentiary matters relating to corporate policy and punitive damages were argued below, the appellees never moved to amend their pleadings. Certainly, the trial court never ruled on an oral amendment to the pleadings, and there was neither an express nor an implied consent to any amendments. *See* ARCP Rule 15 (a) and (b). Upon remand the trial court should settle the matter of the pleadings and then, if pleadings are to the effect that all the defendants are equally culpable, the appellant alone may not be singled out as a target for punitive damages. *Curtis, supra.* On the other hand, if the allegations are that the appellant railroad was guilty of greater culpability than the individual defendants, the claims for compensatory and punitive damages against the railroad and the claims for compensatory damages against the employees may be joined. *See* W. Prosser, Handbook of the Law of Torts § 297 (4th ed. 1971). The issue of proof of the financial worth of appellant is not raised on this appeal and therefore we do not reach it.

Appellant next contends that the trial court erred in allowing testimony involving negotiations. This point is also likely to again arise upon retrial.

The appellees called Ron Glover, a claims agent of appellant railroad, as their witness. The material question and answer are:

> Q. And you are telling this jury that you don't remember telling Mr. Wolford, "Well, it's cheaper for us to pay these claims than it is to try to maintain the right-of-way to prevent fires"?
> A. No sir, I'm telling them that I did not say that.

The appellees then called William Wolford who testified that, while he was in the process of settling his claim, Ron Glover did make such a statement to him:

> Q. What did he tell you?

A. He told me that it was less expensive to settle claims caused by the fires rather than to keep the right-of-ways of the railroad mowed and to keep fires from starting.

Appellant first argues that the statement is hearsay because its agent did not have authority to make such a statement. However, these statements are not hearsay and fall within the definition of an admission of a party opponent as set forth in Ark. Stat. Ann. § 28-1001, Rule 801 (d) (2) (iv) (Repl. 1979), which provides:

(d) Statements Which Are Not Hearsay. A statement is not hearsay if:
(2) Admission of a party-opponent. The statement is offered against a party and is . . . (iv) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship.

It is no longer necessary that an agent be authorized by his principal to make a statement. As we said in *Houston General Ins. Co.* v. *Arkansas Louisiana Gas Co.*, 267 Ark. 544, 592 S.W.2d 445 (1980):

The range of statements admissible under the agency standard was broadened considerably by this rule which is a verbatim adoption of the Federal Rules of Evidence rule 801 (d) (2) (D), 28 U.S.C.A. "Once agency, and the making of the statement while the relationship continues, are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency." Weinstein's Evidence § 801 (d) (2) (D) [01], p. 162. See also *Mahlandt* v. *Wild Canid Survival, etc.*, 588 F.2d 626 (8th Cir. 1978); *Process Control* v. *Tullahoma Hot Mix Paving Co.*, 79 F.R.D. 223 (E.D. Tenn. 1977); and *Pino* v. *Protection Maritime Ins. Co., Ltd.*, 599 F.2d 10 (1st Cir. 1970). The rule insures the trustworthiness and reliability of the admission by providing that such statements are admissible only if made during the existence of the relationship. An employee is unlikely to

jeopardize his job by making false statements which are costly to his employer. Weinstein's, *supra.*

The real issue is whether the admission made during settlement negotiations is admissible. *See Ark. Stat. Ann.* § 28-1001, Rule 408 (Repl. 1979). The trial court took the erroneous position that the testimony was admissible to impeach Glover under these circumstances. However, the appellees were not trying to impeach Glover but instead were trying to get the evidentiary matter of the policy of the railroad before the jury in their case-in-chief.

Rule 408 governs the issue. The first two sentences of the rule, which are only slightly different from their federal counterpart, are as follows:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove *liability for,* invalidity of or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. [Emphasis added.]

The clear meaning of these first two sentences is that statements made in compromise negotiations of a third party claim are not admissible to prove liability.

Although the statement made during settlement negotiations is inadmissible in the plaintiff's case-in-chief, upon retrial the statement would be admissible in a specific situation — if offered to impeach the direct testimony of the railroad. The last sentence of Rule 408 which is almost identical to its federal counterpart, provides:

> This rule does not require exclusion if the evidence is offered *for another purpose,* such as proving bias or prejudice of a witness . . . [Emphasis added.]

The third sentence, which is by way of illustration and not limitation, must be reconciled with the first two. The

drafters of the rule were attempting to adopt a policy to encourage compromise and, at the same time, not to immunize all evidence merely because it was presented during negotiations. They clearly decided that the need to evaluate a witness's credibility outweighs some parts of the policy of encouraging compromise. There are two ways to construe and reconcile the third sentence with the first two. One is to read the first two sentences as always barring evidence of compromise when offered to prove the ultimate fact. The other, and better, approach is to read the last sentence as *permitting the use of compromise evidence to* reach the policy goals of the rules of evidence. For example, it is suggested that bias or prejudice of the witness may be shown only when the evidence permits the inference of bias to be made without an inference of the offeror's belief in the validity of the claim being settled. *See* 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5314 (1980). In the case of proof of bias there is no policy reason to invade the area of the offeror's belief in the validity of the claim. But, as a matter of policy, there is a great distinction between offering evidence which permits an inference of bias and offering evidence which proves a false representation.

The policy of the Rules of Evidence is "to the end that the truth may be ascertained." Rule 102. The purpose of Rule 408 is to promote complete candor between the parties to the settlement negotiations but not to protect false representations. Thus, when a party has made a statement at trial which is inconsistent with a statement made during settlement negotiations, the inference is that one of the statements is knowingly false. In such a situation, we conclude that the mandate in Rule 102 to interpret the rules so as to foster the values of "fairness" and "truth" requires us to hold that prior inconsistent statements made in the course of settlement negotiations should be admitted for impeachment purposes. *See* C. Wright & K. Graham, *supra.*

This policy interpretation of Rule 408's exclusionary rule is consistent with the Supreme Court's policy interpretation of the Fourth Amendment exclusionary rule. The latter rule is that evidence obtained in an illegal search is inadmissible in the government's case-in-chief but is ad-

missible to impeach the direct testimony of the defendant. *United States* v. *Havens,* 446 U.S. 620 (1980).

Upon retrial the same proof may not develop, and therefore we do not address in full appellant's argument that there was insufficient evidence to support an award of punitive damages. We do point out that if a defendant knew that its corporate policy would inflict damage but nevertheless continued that policy with a conscious indifference to the consequences, it could be liable for punitive damages. As stated in *Forrest City Machine Works* v. *Aderhold,* 273 Ark. 33, 616 S.W.2d 720 (1981), "[A]s a matter of public policy, punitive damages can serve useful functions . . . " That function can well be served in the event of such a corporate policy. *Brown* v. *Missouri Pacific R.R.,* 703 P.2d 1050 (8th Cir. 1983).

Reversed and remanded.

ADKISSON, C.J., and HICKMAN, J., concur in part and dissent in part.

RICHARD B. ADKISSON, Chief Justice, concurring in part, dissenting in part. Rule 408, Uniform Rules of Evidence, provides that statements made during settlement negotiations are "not admissible to prove liability for, invalidity of, or amount of the claim or any other claim." To allow the substantive presentation of such evidence under the guise of impeachment for bias is but to circumvent the purpose of the rule which is to encourage open and frank settlement negotiations.

DARRELL HICKMAN, Justice, concurring in part, dissenting in part. This was a complicated case, tried over a period of several days, involving four plaintiffs who suffered damages from fires alleged to have been caused by Missouri Pacific Railroad Company. The plaintiffs, appellees here, originally sued Missouri Pacific and some of its employees, not only for compensatory damages but also for punitive damages. Before proceeding to trial, the appellees deleted their request for punitive damages against all employees, claiming punitive damages only against the appellant,

Missouri Pacific Railroad Company. This was clearly prejudicial error and requires us to reverse the decision because of our decision in *Curtis* v. *Partain, Judge,* 272 Ark. 400, 614 S.W.2d 671 (1981). That decision is exactly in point; all or none of the defendants must be sued for punitive damages.

I do not agree that the trial court committed error in any other way. The appellees' lawsuit can best be characterized as one more for punitive damages than for compensatory damages. The four appellees who filed the lawsuit suffered damages as a result of four separate fires; their claims for reimbursement for damages were not significant as the verdict indicates. The four were compensated together less than $6,000 for their damages; but each was awarded $200,000 in punitive damages. The appellees alleged that Missouri Pacific had on numerous occasions over the last three years negligently and carelessly started fires, was made aware of these fires and took no action to prevent further damage; that the conduct of Missouri Pacific in allowing its trains to consistently, continuously, negligently and carelessly start fires manifested a complete and utter indifference for the safety of the appellees' property. Missouri Pacific was made aware that its trains were destroying the appellees' property and continued to operate them knowing that the operation of those trains, in the manner in which they had been operated, would damage the appellees' property. There was evidence submitted that Missouri Pacific was placed on notice of the condition of its right of way in previous lawsuits and was aware that there had been fifty fires in the preceding eighteen months along this section of the track in Independence County, Arkansas — all but one being started on the right of way. An employee of appellant testified that the employees were directed that fusees be thrown to the side of the track rather than between the rails, to avoid damage to the ties. There was evidence that there were more fires on this section of the track than in any other section in the district. The appellees offered evidence in detail from landowners, including the appellees themselves, as to the frequence of the fires in this area. Reports of the local forest ranger were introduced about the fires. This evidence in my judgment was sufficient to support the award for punitive damages

which is one of the questions presented to us and will undoubtedly arise again on a retrial.

The majority is simply substituting its judgment for that of the trial court on the question of consolidation. The rule clearly allows consolidation where common questions of law *or* fact are involved. Here *both* are involved. ARCP, Rule 42.

Now, instead of one trial — a considerable saving to the State — there will be four separate trials in which exactly the same evidence will be admitted: evidence of all the fires along this stretch of the right of way and evidence of the other three claims, which will be the subject of separate lawsuits. The justification for this rigid and unreasonable position is that it is more likely that a jury will more harshly penalize a defendant where there are multiple claims than if there were only one. This court does not have a history of favoring punitive damages and never hesitates to strike or reduce punitive damages. That is what the majority ought to do if it fears an excessive award rather than nullifying the rule.

It is true that the statement made by Ron Glover, a claims representative for Missouri Pacific, was admitted to impeach rather than to directly prove that Missouri Pacific had a policy for paying claims rather than preventing the continuation of a dangerous situation, and, the statement was made during negotiations for settlement of the claim. Ordinarily such a statement is inadmissible to prove the validity of a claim. But that does not mean that Ark. Stat. Ann. § 28-1001, Rule 408 (Repl. 1977), requires that the statement be excluded, if it was admissible for any other purpose. I think the statement went directly to the plaintiffs' claim for punitive damages, to show that Missouri Pacific had a complete utter indifference and conscious disregard for the safety of the appellees' property. What better proof could there be than the statement? Furthermore, the statement did not go to the compromise or settlement of the claim that was being settled at the time the statement was made. It was an offhand remark that to me was irrelevant as to that particular claim. But it was certainly relevant as to the cause

of action expressed by the appellees herein. It is true that the pleadings do not state explicitly that Missouri Pacific ought to be punished because it has a policy of paying claims rather than preventing fires. But when the pleadings are taken in a liberal context, as we should take them, that is, in effect, what the pleadings say, and that is the reason the railroad company had punitive damages adjudged against them.

In the case of *Brown* v. *Missouri Pacific*, decided by the 8th Circuit Court of Appeals April 1, 1983 (Slip Opinion No. 82-1946), the court held that a statement made by an employee of the railroad about policies of the railroad was admissible on the question of punitive damages. Punitive damages were claimed in the *Brown* case because it was alleged that the railroad knew, or had reason to know, that its course of conduct was about to inflict injury, but nonetheless continued a course of conduct with a conscious indifference to the consequences. I think the claim in the *Brown* case for punitive damages was substantially like the one made in this case, and the only difference would be that the statement made in the *Brown* case was made at a civic club meeting, and in this case it was made by a claims agent during negotiations. Rule 408 does not preclude such a statement from being admitted where there is a direct cause of action for punitive damages because a company continues a course of conduct that amounts to willful and wanton indifference, for which penalties should be imposed. The landowners were able to prove that it is, indeed, cheaper to pay claims than to prevent a dangerous act.

I must emphasize for the benefit of the parties that this is a concurring opinion expressing only my views.