REGIONS BANK & TRUST *v.*
STONE COUNTY SKILLED NURSING FACILITY, INC.

01-312 49 S.W.3d 107

Supreme Court of Arkansas
Opinion delivered July 9, 2001

556

*Sandy McMath,* for appellant.

*David A. Littleton* and *Mariam T. Hopkins,* for appellee.

J|IM HANNAH, Justice. This case arises from the sexual assault of a semi-comatose quadriplegic nursing home patient, Vicki Elder, by certified nursing assistant Bill McConnaughey. Appellant Regions Bank, the personal representative of Vicki Elder, argues that the trial court erred in granting summary judgment. The complaint alleges claims of negligence in failing to provide Elder the care and attention reasonably required by her condition, negligence based upon respondeat superior, and negligence in supervision of McConnaughey as an employee. Regions argues there are genuine issues of material fact.

The court of appeals, in a 4-2 decision, held that the sexual assault was not committed in the course and scope of employment and, thus, could not give rise to liability based upon respondeat superior. The court of appeals was unanimous in holding that there was a question of fact under negligent supervision as to whether Stone County Skilled Nursing Facility was negligent in permitting unaccompanied access to helpless female patients by male aides who had little or no previous health care experience.

We hold that there is a question of fact as to the issue of negligent patient care regarding whether there was a breach of the duty to use ordinary care in furnishing Elder the care and attention reasonably required by her condition. Stone County Skilled Nursing Facility had assumed responsibility for virtually every aspect of Elder's well being and was under a duty to use ordinary care to protect her from foreseeable harm. We affirm the trial court on the issues of respondeat superior and negligent supervision of an employee. However, we find that there is a genuine question of material fact on the issue of negligent patient care, the duty to

provide the care and attention reasonably required by her condition. This case is affirmed in part, and reversed and remanded in part.

*Facts*

On November 3, 1996, Elder was a semi-comatose quadriplegic patient at Stone County Skilled Nursing Facility. Her communication was limited to smiling and communicating with her eyes. On this same date, Marlie O'Dell Foster and Bill McConnaughey were certified nursing assistants (CNA's) working as a team in cleaning and turning patients. They had just completed cleaning and turning Elder, and had placed her on her right side, when another CNA came into the room and asked Foster to assist her in placing a patient in a whirlpool bath.

Foster left McConnaughey in the room with Elder. Their care for her at that time was virtually finished when Foster left. All that had to be done was to pull down her gown and pick up the dirty linen. However, Foster returned to Elder's room a short time later and discovered McConnaughey sexually assaulting Elder. Foster indicated that Elder had been moved by McConnaughey after she left the room. Elder was repositioned on her back with her legs spread to facilitate McConnaughey's sexual assault on her with his hand. Foster testified in deposition that she was so taken aback by what she was seeing that she just stood there for some time observing the act. In her deposition, she described the act in graphic detail that leaves no doubt as to what was occurring.

When McConnaughey realized he had been caught, he flushed red and pulled down Elder's gown. Foster did not confront McConnaughey, but rather first spoke with a fellow CNA who counseled Foster to wait and see if it happened again. However, Foster instead went to the charge nurse, Becky Diaz, and reported what she had seen. Diaz told Foster she would report it to Kathy Baldwin, the director of nursing. However, Baldwin was off that day and Diaz was unable to contact her or the administrator, Vicki Sandage. Diaz did check Elder that evening and found that she was resting peacefully and showed no signs of bruising or injury. Diaz reported the assault to Sandage the next day, twenty-two hours after the assault. Sandage then reported the assault to Elder's father, Elder's doctor, and to the police. McConnaughey was suspended.

Prior to these events, McConnaughey originally began work at Stone County Skilled Nursing Facility in housekeeping. He was

hired based upon an interview and a recommendation from a local plumber. After two months, he transferred to a CNA's position. This transfer required McConnaughey to undergo a seventy-two-hour CNA's course. The first sixteen hours were spent in a classroom, and the remaining hours were spent under instruction while working with patients. Prior to hiring McConnaughey, Stone County Skilled Nursing Facility checked the DNA registry and the abuse hotline. These calls did not reveal any previous problems with McConnaughey.

McConnaughey had been a CNA for about a month when the assault occurred. He had completed a six-and-one-half-page, single-spaced checklist of skills, all showing completion and approval by the same nurse on the same day.

It appears McConnaughey had done well in housekeeping and, until this assault, had done well in nursing, so far as his superiors were aware. They testified in deposition that nothing in his interview, conduct at work, or anything done in his duties caused them concern that he might commit such an assault as this. There was no evidence to put Stone County Skilled Nursing Facility on notice that McConnaughey posed a danger of committing a sexual assault on a patient.

*Standard of Review*

As we have often stated, summary judgment is to be granted by a trial court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Estate of Donley v. Pace Indus.*, 336 Ark. 101, 984 S.W.2d 421 (1999); *Mashburn v. Meeker Sharkey Financial Group*, Inc., 339 Ark. 411, 5 S.W.3d 469 (1999). Once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the motion's opponent cannot rely on a bare denial or contrary allegation but must meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje v. First National Bank Of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Rankin v. City*, 337 Ark. 599, 990 S.W.2d 535 (1999); *George v. Jefferson Hospital Assoc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001).

■ This case came to us when we granted appellant's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e)(iii). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

### Causes of Action at Issue

The complaint does not specifically set out the causes of action. Some confusion also arises because Regions chose to use the term 'negligent supervision' to refer to both negligent supervision of McConnaughey as an employee and to negligent supervision of Elder's care as an infirm and helpless patient. However, the complaint contains three basic allegations: that the sexual assault was committed in the course and scope of employment and Stone County Skilled Nursing Facility was thus liable under respondeat superior; that Stone County Skilled Nursing Facility negligently supervised employee McConnaughey; and that Stone County Skilled Nursing Facility failed to provide the proper staffing and staffing policies necessary for the required treatment, attention, and medical services needed by patients. This included an allegation of a failure to properly provide for the protection of patients from criminal assault.

The argument made by Regions to the trial court in opposition to the motion for summary judgment bears out the conclusion that the three claims were at issue in the motion for summary judgment. Although respondeat superior and negligent supervision are discussed in greatest detail, the allegation of the failure to properly provide for patient safety was at issue. At the hearing before the trial court on the motion for summary judgment, counsel for Regions argued, "All of the foregoing provide strong circumstantial evidence which would lead the trier of fact to conclude that there was faulty patient-safety supervision in a facility charged with the custodial care of disabled and infirm patients, some of them, such as plaintiff's deceased, who were totally helpless." The same argument is found in Region's brief in opposition to the motion for summary judgment. A review of the trial court's order reveals that the trial court ruled on all three claims. In the order, the trial court granted summary judgment on the issues of respondeat superior and negligent supervision of an employee and then stated, "The Arkansas Supreme Court has not had occasion to expand the negligent supervision cause of action to include the elements argued by the

plaintiff in its memorandum brief." Clearly the trial court, in granting the motion for summary judgment, was including the negligent patient-care claim.

■ ■ The wording of the order might give rise to a concern that this court is considering a claim not decided by the trial court. It is incumbent on the appellant to bring to the trial court's attention the fact that the court has failed to decide a specific claim raised by the appellant. *See Oglesby v. Baptist Med. Sys.*, 319 Ark. 280, 891 S.W.2d 48 (1995). Here, however, the circumstances are different from *Oglesby*. In *Oglesby*, the trial court failed to address a separate battery claim in any form or fashion, and the plaintiff/appellant asked this court to remand that claim for a decision by the trial court. We refused because that party had not brought the battery claim to the trial court's attention. In the case before us, the trial court did grant summary judgment as to the negligent patient-care claim. Here the scope of the cause of action pled was misconstrued by the trial court, which is different from a trial court's failure to consider a claim for relief altogether. Admittedly, part of the confusion resulted from the fact that Regions also couched its cause of action in terms of negligent supervision. We do not consider the *Oglesby* decision to be controlling. We now consider all three causes of action and whether a material question of fact exists.

### Negligent Patient Care

■ Elder was a helpless, semi-comatose quadriplegic. Stone County Skilled Nursing Facility assumed responsibility for her care and required payment therefor. They were therefore under a duty of ordinary care to provide such attention as her condition reasonably required. *Dollins v. Hartford Acc. & Ind. Co.*, 252 Ark. 13, 477 S.W.2d 179 (1972). Given Elder's total inability to take care of herself, Stone County Skilled Nursing Facility was responsible for every aspect of her well being. *Niece v. Elmview Group Home*, 131 Wash.2d 39, 929 P2d 420 (1997). This duty should not be confused with that of negligent supervision of employees. The Supreme Court of the State of Washington has done an admirable job discussing and distinguishing these two causes of action in *Niece*. The Washington Supreme Court there explained:

> This argument is based on an incorrect understanding of the duty that gives rise to a cause of action for negligent supervision of employees. The theory of liability for negligent supervision is based upon the special relationship between employer and employee, not

the relationship between group home and resident. [Footnote omitted]. Cases like *Thompson* [*v. Everett Clinic*, 71 Wash. App. 548, 860 P.2d 1054 (1993),] and *Peck* [*v. Siau*, 65 Wash. App. 285, 827 P.2d 1108 (1992)], which define the scope of an employer's duty to control its employees for the protection of third parties, do not inform the scope of the duty of care owed by Elmview to Niece by virtue of Elmview's special relationship to her. While an employer generally does not have a duty to guard against the possibility that one of its employees may be an undiscovered sexual predator, a group home for developmentally disabled persons has a duty to protect residents from such predators regardless of whether those predators are strangers, visitors, other residents, or employees.

*Niece*, 131 Wash.2d at 49, 929 P.2d at 426. The court continued:

Elmview's duty to protect Niece from all foreseeable harms, including the harm of sexual assault by staff, is much broader than its duty as an employer to control its employees. The same evidence that would establish Elmview's negligence under a broad theory of negligent supervision will also establish its negligence in failing to protect Niece from all foreseeable harms. Niece's cause of action for negligent supervision thus collapses into her negligence claim based on Elmview's breach of its special relationship duty of care. We therefore find it unnecessary to determine whether Niece has presented a factually sufficient claim for negligent supervision.

*Niece*, 131 Wash. 2d at 52, 929 P.2d at 428.

■ We hold that Stone County Skilled Nursing Facility bore a duty of ordinary care to furnish Elder the care and attention reasonably required by her condition. *See Bailey v. Rose Care Center*, 307 Ark. 14, 817 S.W.2d 412 (1991), (involving an alleged failure to provide the care and attention reasonably required by the condition of an eighty-nine-year-old resident of a nursing home who left the home unnoticed in his wheel chair and was subsequently struck by a pick-up truck and killed instantly). Such a duty has been established in earlier cases. In *Dollins, supra,* the issue was whether there was neglect that resulted in injury from a fall where the patient was known to be "confused" and was found on the floor at the foot of the bed. This court stated that it was "the duty of the hospital to see that the patient had such attention as her condition apparently made necessary." *Dollins*, 252 Ark. at 18. The care required was "that proportionate to the danger apprehended, judged by the condition of affairs before the accident occurred." *Dollins*, 252 Ark. at 18. In *Durfee v. Dorr*, 123 Ark. 542, 186 S.W. 62 (1916), this court stated

that Durfee, as a patient of a hospital, was owed a duty of reasonable care and attention given the necessities of his case. Mr. Durfee was left alone in the room by himself while in "a feverish, nervous, delirious, or unconscious condition." While in that condition he walked out an upstairs door and fell over a bannister. He died of the injuries. In short, a hospital or, in this case, a nursing home, is required to consider the patient's capacity to care for himself or herself and to protect the patient from dangers created by his or her weakened condition. Providing a safe environment for patients is within the scope of the professional services of a hospital or nursing home. *Sexton v. St. Paul Fire & Marine Ins. Co.* 275 Ark. 361, 631 S.W.2d 270 (1982).

■ Elder could not speak or call out if in need. She was wholly at the mercy of those who saw after her at Stone County Skilled Nursing Facility. If anyone entered her room, there was nothing she could do. As events of recent years have sadly shown, nursing-home residents and hospital patients have been the victims of assault not only by employees but also by others, even persons wandering in off the street. The natural and probable consequence of failing to provide a reasonably safe nursing home or hospital is injury or assault. There is a question of fact on whether the duty of care was breached and an issue of foreseeability to be considered by the trier of fact. Proximate cause is usually a question for the jury. When the evidence is such that reasonable minds cannot differ, the issue becomes a question of law to be determined by the trial court. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998); *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993).

■ The alleged breach of duty in this case was discussed by Regions' expert Pamela Taylor Smith, who opined in an affidavit attached to the opposition to the motion for summary judgment. Smith stated:

> It is my opinion that the Stone County Nursing Center was negligent in the care it provided to Ms. Vicki Elder by a policy which permitted unaccompanied access to helpless female patients, such as herself, by male aides with little or no previous health care experience. This policy was not in keeping with accepted nursing practice. Further, and also contrary to accepted nursing practice, the facility failed to supervise its aides, particularly those such as Mr. McConnaughey, who had not been on the job long enough to establish a record of patient care and dependability.

Smith opined that Stone County Skilled Nursing Facility failed to provide Elder the appropriate protection given her condition. Other facts developed in this case show that access to Elder may not have been appropriately controlled and that this posed a danger to her safety. There is evidence that might support a claim that Stone County Skilled Nursing Facility failed to furnish Elder the care and attention reasonably required by her mental and physical condition. In short, in considering the pleadings and evidence, there is a genuine question of material fact as to whether there was a breach of the duty to use ordinary care in furnishing Elder the care and attention reasonably required by her condition. *Bailey, supra. See also, Sexton, supra; Dollins, supra; Durfee, supra; Niece, supra.* In the case before us, the trial judge failed to appreciate Region's claim for negligent patient care. The grant of summary judgment is reversed as to this cause of action.

### Respondeat superior

■ The assault was a criminal act undertaken for McConnaughey's own personal interest. The act itself is evidence it was undertaken for sexual gratification. *Farmer v. State,* 341 Ark. 220, 15 S.W.3d 674 (2000). The act likely gave rise to liability for rape under Ark. Code Ann. § 5-14-103 (Repl. 1997). *Dabney v. State,* 326 Ark. 382, 930 S.W.2d 360 (1996). That the assault was undertaken for his own purposes is also made clear by the acts committed by McConnaughey just prior to the assault, which were wholly unrelated to his duties to clean and care for Elder. He and Foster had already cleaned, turned, and placed Elder on her right side. She was positioned in the manner in which they intended to leave her. The only thing left for McConnaughey to do was to pull down Elder's gown and pick up the dirty linen. When Foster returned, however, she found Elder moved and repositioned on her back, her legs spread, so as to facilitate the sexual assault. This criminal assault did not occur incident to McConnaughey's employment duties. His act of moving her and assaulting her might have been undertaken by anyone, even a visitor to the home, a delivery person, or a stranger off the street.

■ In *Porter v. Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997), this court discussed respondeat superior in the context of a sexual assault of a conscious patient during the course of a gallbladder ultrasound. The court found that in such a case we would adhere to the theory of master-servant liability that we have followed since 1910, that an act of an employee, in order to render the

employer liable, must pertain to something that is incident to the employee's duties and which it is his duty to perform or for the benefit of the employer, citing *Sweeden v. Atkinson Imp. Co.*, 93 Ark. 397, 125 S.W. 439 (1910). The court also cited *Gordon v. Planters & Merchants Bankshares*, 326 Ark. 1046, 935 S.W.2d 544 (1996) and *Life & Cas. Ins. Co. of Tenn. v. Padgett,* 241 Ark. 353, 407 S.W.2d 728 (1966), wherein we stated:

> We think the law as it stands today is fairly summarized in the Restatement of Torts, where it is said that the master is subject to liability for his servant's intentional tort "if the act was not unexpectable in view of the duties of the servant." Restatement, Torts (2d), 245 (1958).

Whether the employee's action is within the scope of the employment depends on whether the individual is carrying out the "object and purpose of the enterprise," as opposed to acting exclusively in his own interest. *Gordon, supra.*

 Applying these principles to the facts before us, we agree with the trial court that McConnaughey's sexual assault of Elder was unexpectable. As in *Porter*, McConnaughey was not, by any stretch of the imagination, acting within the scope of his duties as a CNA when he assaulted Elder. Rather, McConnaughey's actions were purely personal. Because McConnaughey's actions were not expectable in view of his duties as a CNA, Stone County Skilled Nursing Facility may not be held liable for the sexual assault and was thus entitled to summary judgment as a matter of law. *Porter, supra. See also, Padgett, supra.*

### Negligent Supervision

Regions argues that the trial court was in error in granting the motion for summary judgment as to negligent supervision in allowing newly hired male aides unaccompanied access to immobile, semi-comatose female patients.

 Negligent supervision of employees has been discussed in Arkansas. Foreseeability of the act committed is an element of the tort in this state. In *American Automobile Auction, Inc. v. Titsworth*, 292 Ark. 452, 730 S.W.2d 499 (1987), this court stated that an employer who hires two ex-convicts, one of whom is normally drinking, and entrusts to them the job of forcibly ejecting patrons, has a duty to exercise reasonable care to avoid harm to those patrons

by exercising supervisory care when the employer knows, or by the exercising of reasonable diligence ought to know, that such employees are about to forcibly eject a patron. Thus, there is a duty of reasonable care in supervision of employees. A foreseeable consequence of using inebriated ex-convict bouncers is that they might use too much force in carrying out their duties in ejecting patrons from a bar. *See also, Life & Cas. Ins. Co. of Tenn. v. Padgett, supra* (wherein a dispute was not unexpectable where there was an employment duty to collect money).

 Decisions from other jurisdictions are helpful in understanding negligent supervision of employees. Negligent supervision of employees creates a limited duty to control an employee for the protection of third parties even where the employee is acting outside the scope of employment. *Niece v. Elmview Group Home, supra. See also, Trahan-Laroche v. Lockheed Sanders, Inc.*, 139 N.H. 483, 657 A.2d 417 (1995). However, an employer is not liable for negligently supervising an employee whose conduct is outside the scope of the employment unless the employer knew or, in the exercise of reasonable care, should have known that the employee presented a risk of danger to others. *Thompson v. The Everett Clinic*, 71 Wash. App. 548, 860 P.2d 1054 (1993). The Georgia Court of Appeals stated that to create an issue of fact on a claim of negligent supervision, the plaintiff must come forward with evidence that the employer knew or should have known of the employee's violent or criminal propensities. *Heard v. Mitchell's Formal Wear, Inc.*, 2001 WL 468776 (Ga. App. 2001). Our own court of appeals has also found that to recover under a theory of negligent supervision, a plaintiff must show that an employer knew or, through the exercise of ordinary care, should have known that its employee's conduct would subject third parties to an unreasonable risk of harm. *Sparks Reg. Med. Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998). This is required because foreseeability must be established. *Tistworth, supra; Padgett, supra; N.X. v. Cabrini Medical Center*, 719 N.Y.S.2d 60 (2001). The court in *N.X.* stated that "the failure to establish this element renders the tortious conduct unforeseeable as a matter of law." *N.X.*, 719 N.Y.S.2d at 66. Foreseeability is required. In Arkansas, negligence is the proximate cause of an injury only if the injury is the natural and probable consequence of the negligent act and ought to have been foreseen in the light of attending circumstances. *Lindle Shows v. Shibley*, 249 Ark. 671, 460 S.W.2d 779 (1970). Foreseeability is an element of a negligence cause of action in Arkansas. *Benson v. Shuler Drilling Co.*, 316 Ark. 101, 871 S.W.2d 552 (1994).

■ To find a cause of action under negligent supervision of an employee, one must find that the natural and probable consequence of negligent supervision in allowing a newly hired and untried nurse's aide to care for an immobile, semi-comatose female patient is sexual abuse by that nurse's aide. As discussed, absent some form of notice that the employee posed a danger, such an act is not foreseeable. Here, there was no indication of a prior criminal record or patient abuse. There was nothing to put Stone County Skilled Nursing Facility on notice that McConnaughey might do such a thing as sexually assault a patient. The fact that McConnaughey was an inexperienced CNA does not give rise to a reasonable probability that he would commit criminal sexual assault. On this basis, it was not foreseeable that McConnaughey would commit criminal sexual assault.

■ In coming to the conclusion that there is no liability under the claim for negligent supervision of an employee, it should be noted that the cause of action is not as broad as one under the duty to protect Elder from foreseeable harm. *Niece, supra.* Stone County Skilled Nursing Facility was under a duty to protect Elder from foreseeable harm, including the harm of sexual assault. Thereunder, an assault might give rise to liability whether the assault was committed by an employee, a visitor, or by someone coming in off the street. Niece, supra.

■ We find on the issue of negligent supervision of McConnaughey as an employee that because there was no notice in this case, the trial court's decision on this issue is affirmed.

Affirmed in part, and reversed and remanded in part.