Martha C. SEXTON, Executrix of the Estate of
Walter Allen SEXTON, Deceased *v.* ST. PAUL FIRE
& MARINE INSURANCE CO.

81-242 631 S.W. 2d 270

Supreme Court of Arkansas
Opinion delivered March 29, 1982
[Rehearing denied May 3, 1982.*]

*Charles M. Walker,* of *Wilson, Gunter & Walker, P.A.,*
for appellant.

*Victor Hlavinka,* of *Atchley, Russell, Waldrop &
Hlavinka,* for appellee.

RICHARD B. ADKISSON, Chief Justice. The Nevada
County Circuit Court granted a motion for a directed verdict
in favor of appellee after finding that appellant had failed to
meet the burden of proof for "medical injury" as required by
Act 709 of 1979 (Ark. Stat. Ann. § 34-2613 — 2620 [Supp.
1981]). On appeal we affirm.

PURTLE, J., would grant rehearing.

Appellant's husband, Walter Sexton, was admitted to the Nevada County Hospital on May 29, 1979, after being diagnosed as suffering from diabetes, generalized arteriosclerosis, and a kidney infection. He was 81 years old and was mentally confused during much of his stay in the hospital. The nurses' notes reflect that on May 31, he fell in the bathroom but was not seriously injured and that on June 2 he nearly fell and was put to bed. Nurses found him attempting to climb out of bed on numerous occasions. On June 2 one of the nurses called Sexton's doctor to ask if he would authorize a Posey vest. A Posey vest is a type of safety restraint that fits around a patient's chest and is tied under the bed to keep the patient from getting out of bed. The doctor authorized the restraint "as needed for safety" but allowed the nurses to make the final decision as to whether to use the vest. No Posey vest was given to Sexton, and on June 3 he fell again, fracturing his hip and shoulder. Sexton died several months later. His wife, as executrix of his estate, brought suit alleging that the hospital was negligent in failing to place the vest on her husband.

The trial court based the granting of the directed verdict for appellee on Ark. Stat. Ann. § 34-2614 (Supp. 1981), which provides:

Burden of proof. — (A) In any action for medical injury, the plaintiff shall have the burden of proving:

(1) The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality; and

(2) That the medical care provider failed to act in accordance with such standard; and

(3) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred. . . .

Appellant did not introduce any evidence of the degree of

skill used by other hospitals in the same or similar locality as required by this statute.

Appellant correctly argues that this Act is only applicable to professional services. Ark. Stat. Ann. § 34-2613 (Supp. 1981) provides:

> (C) 'Medical injury or injury' means any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

However, appellant incorrectly argues that the use of a Posey vest is not a professional service. Testimony revealed that only the doctor could authorize its use, although its actual placement on the patient was left to the discretion of the nurse.

A hospital is required to consider the patient's capacity to care for himself and to protect the patient from dangers created by his weakened condition. Providing a safe environment for patients is within the scope of the professional services by a hospital. *Murillo* v. *Good Samaritan Hospital of Anaheim*, 99 Cal. App. 3d 50, 160 Cal. Rptr. 33 (1979).

Analogous are decisions holding that whether to raise bedrails involves the expert judgment of the health care provider and is, therefore, beyond the common knowledge of the jury and a matter as to which expert testimony is required. *See Carrigan* v. *Sacred Heart Hospital*, 104 N.H. 73, 178 A. 2d 502 (1962); *Mossman* v. *Albany Medical Center*, 311 N.Y.S. 2d 131 (1970).

Affirmed.

HICKMAN, PURTLE, and HAYS, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority has given the statute in question a most liberal interpretation. It is my judgment that we should strictly construe the statute.

The facts are fairly set out by the majority and the question is whether Walter Sexton, an elderly man, suffered a "medical injury" when he fell out of bed fracturing his hip and shoulder. For at least two days prior to this time, the medical records indicated that he had been falling, was in danger, and needed special care and attention. A physician gave permission, if necessary, to put the patient in a posey vest for his protection. The nurse in charge failed to put him in that vest and the majority finds that her decision was a professional one. I seriously disagree with that judgment. It does not take any special knowledge or skill to know that in a case like this the patient needed restraint. It was a common sense judgment that any mature adult could have made. If there was a professional decision involved, it had already been made by the doctor. Expert testimony should not have been required of the plaintiff.

At issue here is what advantage is to be granted to a special segment of our society; in this particular case, a hospital. The Act in question places a burden on a plaintiff that does not exist in other negligence cases; that is, an expert witness must be called by the plaintiff to show the degree of skill ordinarily possessed by a hospital in the locality regarding the care of patients.

The majority bases its decision on cases from California and New York; those decisions in my judgment severely limit one's right to sue a hospital or member of the medical profession for any injury that occurs in the hospital. For example, in the case of *Carrigan* v. *Sacred Heart Hospital*, 104 N.H. 73, 178 A. 2d 502 (1962), it was determined that it was a "professional" judgment whether to raise the bedrails

on a bed. I would hardly call that a decision requiring special knowledge or skill.

The reason I would strictly construe this Act is because I consider such legislation to be in the same category as that in derogation of common law, or that of a special grant, privilege or immunity, or an exemption from taxation. In all of these instances we strictly construe the legislation. In *Hackney v. Southwest Hotels, Inc.*, 210 Ark. 234, 195 S.W. 2d 55 (1946), we strictly construed a statute that limited the liability of a hotel keeper. Sutherland in his work on statutory construction recognizes as an established principle of law that legislative grants of rights, powers, privileges, immunities or benefits should be strictly construed against the claims of the grantees. In a significant observation he says:

> In a manner of speaking, all legislation which undertakes to change the existing law must have an effect to redetermine legal relationships between and among people, and can therefore be said to grant rights, powers, privileges or immunities to the advantaged parties as against the disadvantaged ones who are subjected to corelative duties, disabilities or liabilities. SUTHERLAND, STATUTORY CONSTRUCTION, Vol. 3, § 63.02 (4th ed. 1974).

We routinely hold that one claiming an exception from taxation because of a statutory grant has the burden of clearly establishing the exception beyond a reasonable doubt, and the statute will be strictly construed against the exception, and "to doubt is to deny the exemption." *S. H. & J. Drilling Corp. v. Qualls*, 268 Ark. 1, 593 S.W. 2d 178 (1980). Should not liability for a life be at least as important as accountability for a tax?

Furthermore, we should consider the actual intent of the legislature. I cannot believe the legislature meant that an injury caused by such a negligent act as that in this case would be considered a "medical injury." After all, we are expected to use common sense in construing legislation. *Shinn v. Heath*, 259 Ark. 577, 535 S.W. 2d 57 (1976).

I am afraid the majority decision means that any injury occurring in a hospital will be deemed a "medical injury" and, therefore, shielded to a degree from liability.

There are already enough restrictions that make an injured person's recovery difficult in a medical malpractice case. For example, the medical profession enjoys a special statute of limitations of two years, whereas other defendants in negligence cases are liable to suit for three years. Ark. Stat. Ann. § 34-2616 (Supp. 1981); Ark. Stat. Ann. § 37-206 (Repl. 1962); *Midwest Mutual Ins. Co.* v. *Ark. Nat'l Co.*, 260 Ark. 352, 538 S.W. 2d 574 (1976). The Act in question requires a plaintiff to provide testimony that the treatment given was not the kind customarily afforded a patient by medical care providers with similar training in the locality. Ark. Stat. Ann. § 34-2614 (Supp. 1981). Such testimony would necessarily have to come from one qualified as an expert. Furthermore, the plaintiff is required by this same Act to give two months notice to a defendant before suit is filed, Ark. Stat. Ann. § 34-2617 (Supp. 1981), for what reason I cannot imagine.

If there is one basic principle that runs throughout our law it is that equality of treatment is to be the rule. Art. 2, Sec. 18 of the Arkansas Constitution states:

> The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens.

Art. 2, Sec. 13 reads:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, conformable to the laws.

Art. 2, Sec. 3 reads:

> The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen

ever be deprived of any right, privilege or immunity, nor exempted from any burden or duty, on account of race, color or previous condition.

By an initiative petition the people amended the Arkansas Constitution to prohibit the legislature from passing any local or special act. Amend. 14, Ark. CONST. And the list could go on of the attitude of the law regarding grants of special privileges. These principles alone are enough to warrant strict construction of the statute in question.

The medical profession no doubt deserves some privileges because of its service to mankind. But it does not deserve a form of immunity from accountability for its negligent acts which are not caused by any lapse of professional, technical or skilled judgment. That profession should be accountable for its ordinary acts of negligence just like the rest of us.

The issue is not before us as to whether the legislature has the authority to decide procedural matters.

PURTLE, J., and HAYS, J., join in this dissent.