Maureen BAILEY, Administratrix of the Estate of John Fletcher Dowdy, Deceased *v.* ROSE CARE CENTER, A Division of C.A.R.E., Incorporated; Derry D. Hallmark

91-79                                                817 S.W.2d 412

Supreme Court of Arkansas
Opinion delivered October 21, 1991

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Randel K. Miller*, for appellant.

*Barrett, Wheatley, Smith & Deacon*, by: *Lucinda McDaniel*, for appellees.

TOM GLAZE, Justice. At 1:45 a.m., John Dowdy, an eighty-nine-year-old resident of the Rose Care Center, left the nursing home unnoticed in his wheelchair and was subsequently struck by

a pickup truck driven by Derry Hallmark. Mr. Dowdy was killed instantly. Maureen Bailey, as the sister of the decedent and the administratrix of his estate, filed suit alleging negligence on the part of the appellees, Rose Care Center and Hallmark. The jury returned a verdict in favor of the appellees.

The appellant appeals alleging the following four points of error: 1) the trial court erred in giving jury instruction number nine [AMI 1501], because it is an incorrect statement of the law concerning the nursing home's standard of care; 2) there is insufficient evidence to support the jury's verdict; 3) the trial court erred in excluding evidence of the nursing home's modification of the alarm system and adoption of guidelines requiring its use after Mr. Dowdy's death; 4) the trial court erred in refusing to give the appellant's requested instruction, number two, on the measure of damages. Because we find merit in the appellant's first point of error that the trial court erred in giving jury instruction number nine [AMI 1501], we reverse and remand the jury's verdict in favor of Rose Care Center.

All of the appellant's arguments on appeal concentrate on her negligence suit against Rose Care Center. The jury was properly instructed as to law governing the appellant's burden of proof in showing that Hallmark was negligent, and the record clearly shows that there is sufficient evidence to support the jury's finding of no negligence on Hallmark's part. Thus, we affirm the jury's verdict in his favor. *See Womack* v. *Brickell*, 232 Ark. 385, 337 S.W.2d 655 (1960).

At the trial, the trial judge gave the following pertinent jury instructions:

Instruction No. 9 [AMI 1501]

Maureen Bailey, individually and as Administratrix of the Estate of John Fletcher Dowdy, claims damages from Rose Care Center and has the burden of proving each of the four essential propositions:

First, that she sustained damages.

Second, The degree of skill ordinarily possessed and used by nursing homes in good standing in Jonesboro, Arkansas, or in a similar locality,

Third, That Rose Care Center failed to act in accordance with such standard, and

Fourth, That any failure by Rose Care Center to act in accordance with such standard proximately resulted in John Fletcher Dowdy suffering injuries which would not otherwise have occurred.

Instruction No. 13 [AMI 303]

A failure to exercise ordinary care is negligence. When I use the words "ordinary care," I mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence in this case. It is for you to decide how a reasonably careful person would act under those circumstances.

Instruction No. 22 [AMI 1505]

A nursing home must use ordinary care to furnish a patient the care and attention reasonably required by his mental and physical condition.

The appellant objected to instruction nine [AMI 1501] and instead proffered the following jury instruction to be given with the above instruction twenty-two [AMI 1505]:

AMI 203

First, Maureen Bailey, individually and as Administratrix of the Estate of John Fletcher Dowdy, Deceased, sustained damages;

Second, That Rose Care Center and Derry Hallmark, or one of them was negligent; and

Third, That such negligence was a proximate cause of Maureen Bailey's, individually and as Administratrix of the Estate of John Fletcher Dowdy's, Deceased, damages.

Below and here on appeal, appellant argued that AMI 203 together with AMI 1505 (instruction number twenty-two) was the proper standard of care owed by Rose Care Center. While the trial court included AMI 1505 in its jury instructions, it also instructed the jury with AMI 1501. The appellant contends that the trial court erred in using AMI 1501, and we agree.

AMI 1501 (instruction nine) is the jury instruction given in cases involving medical injuries. *See* Ark. Code Ann. § 16-114-206 (1987). Under Ark. Code Ann. § 16-114-201(3) (1987), the definition of medical injury includes "any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error, or omission in the performance of such services." A nursing home is included in the definition of medical care providers. Ark. Code Ann. § 16-114-201(2).

■■ In order to establish, under AMI 1501 and § 16-114-206, that the medical care provider failed to act in accordance with the degree of skill and learning possessed by other members of the profession in good standing, the plaintiff must have expert testimony. *See Sexton* v. *St. Paul Fire & Marine Ins. Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982). On the other hand, AMI 1505 requires only that the plaintiff show that the hospital, sanitarium, or nursing home did not use ordinary care to furnish a patient the care and attention reasonably required by his medical or physical condition. As noted under AMI 303, above, it is for the jury to decide how a reasonably careful person would act under these circumstances. Expert testimony is only required when the asserted negligence does not lie within the jury's comprehension; when the applicable standard of care is not a matter of common knowledge; and when the jury must have the assistance of expert witnesses to decide the issue of negligence. *Prater* v. *St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987).

Two prior opinions by this court, *Sexton* v. *St. Paul Fire & Marine Ins. Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982), and *Brown* v. *St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 (1987), provide insight to the discussion and understanding of this issue. Appellees cite and rely on *Sexton* in this appeal. In *Sexton*, an elderly patient died from injuries sustained after he fell out of his hospital bed. The question before the court was whether the hospital's failure to place a safety restraint vest on a patient fit within the meaning of a medical injury. The patient had fallen out of his bed before, and a doctor had authorized a safety restraining vest but left its use up to the nurses' discretion. Relying on the fact that only a doctor could authorize the use of the safety restraint vest, this court held that the use of the vest is a professional service and thus fit under the definition of a medical

injury. In *Brown*, the court extended the meaning of medical injury to include a patient who walked out of an unlocked door onto the roof of an alcohol treatment center. The patient either jumped or fell to his death. The court held that it was within the scope of the hospital's professional services to provide a safe environment for this patient under the circumstances and failure to do so gives rise to a medical injury.

On reexamination, we conclude that the facts set out in *Brown* did not fall within the definition of medical injury. The *Sexton* case, as previously mentioned, involved the nonuse of a safety restraint vest that had been authorized by a doctor, leaving the final decision for the vest's use to the nurses. The *Sexton* court analogized the situation before it to those holdings where courts had ruled that the raising of bedrails involved expert judgment of the health care provider. We take no exception to that reasoning. However, the circumstances in *Brown* did not involve a professional service but instead raised only the question of whether a patient was properly supervised by the health center's staff. Likewise, in the present case, while Mr. Dowdy was in a wheelchair, he was not ordered by a doctor to be restrained and was able to move around the nursing home at will. In fact, as the nursing home staff testified, Mr. Dowdy was known to stay up late and watch television. And, while he often was confused, he was mentally alert and able to communicate.

In sum, Mr. Dowdy was under a doctor's care while he was in the nursing home, but his death was not the result of a doctor's treatment or order. Instead, the question is whether Mr. Dowdy was properly supervised by the one LPN and five nurse's aides on duty that night. The answer to this question merely requires the jury to decide whether the nursing home used ordinary care in furnishing Mr. Dowdy the care and attention reasonably required by his mental and physical condition.

Accordingly, we hold that the trial court erred in giving AMI 1501 in the form of instruction number nine to the jury. An erroneous instruction which is likely to mislead the jury is prejudicial. *See Howard* v. *Tri-State Ins. Co.*, 253 Ark. 405, 486 S.W.2d 77 (1972). Here, the jury was instructed on the wrong standard of care for the nursing home, thus we reverse and remand the jury verdict in Rose Care Center's favor. To the

extent that our opinion in *Brown* v. *St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 is inconsistent with this holding, it is overruled.

■ We address the appellant's third and fourth points since they will likely recur on remand. The third point concerns the nursing home's alarm system. The nursing home was equipped with an alarm system on the exit doors, but the alarm system was not in use at the time of the accident. At the trial, the appellant attempted to introduce evidence of the nursing home's modification of the alarm system (and adoption of guidelines requiring its use) after the accident. The trial court excluded the evidence under A.R.E. Rule 407, which provides the following:

> Whenever, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The appellant argues that the evidence was admissible under Rule 407 because Ms. McMillian, the administrator of the nursing home, controverted the feasibility of the alarm system. After reviewing her testimony, we do not agree. While Ms. McMillian expressed some doubt as to whether the alarm could have prevented the accident by itself, she did admit in her testimony that having a reliable alarm system would be a good precautionary measure and preferable to just having the staff watching. Ms. McMillian's statements supported the use of the alarm instead of controverting the feasibility of the alarm system; therefore the trial court was correct in excluding the evidence under Rule 407.

■ Likewise, we dismiss the appellant's final argument that the trial court erred in omitting provision (c) of her proffered instruction which allowed damages for the loss of enjoyment of life and the capacity to enjoy life suffered by John Dowdy. In short, our law does not recognize damages for loss of the decedent's enjoyment of life in wrongful death actions. *See* Ark.

Code Ann. § 16-62-102 (1987); AMI 2215.

For the reasons stated above, we reverse and remand the jury's verdict in favor of Rose Care Center and affirm the jury's verdict for Derry Hallmark.