Ginger Wyre HOWARD *v.* OZARK GUIDANCE CENTER

96-175                                    930 S.W.2d 341

Supreme Court of Arkansas
Opinion delivered October 7, 1996

*Brenda Horn Austin,* for appellant.

*Davis, Cox & Wright,* by: *Walter B. Cox* and *Tim E. Howell,* for appellee.

ANDREE LAYTON ROAF, Justice. Appellant, Ginger Howard, was a patient of the appellee, Ozark Guidance Center ("OGC"). Howard sued OGC, claiming that it negligently allowed an affair to continue between its receptionist and Howard's husband. The trial judge granted OGC's motion for summary judgment because the three-year statute of limitations for negligence actions had expired. On appeal, Howard claims that the trial court erred in not applying the continuous-treatment doctrine to toll the statute of limitations. We agree that the continuous-treatment doctrine does not apply to Howard's cause of action, and affirm.

In June of 1986, Ginger Howard began receiving counseling services at Ozark Guidance Center, Inc. During this time, Howard became romantically involved with Lee Wyre, another OGC patient and the two were married on May 20, 1989. After their marriage, both Howard and Wyre continued their individual therapy sessions and also began marriage counseling with OGC.

In February 1990, Howard began to suspect that OGC's receptionist, Stephanie VanBrunt, was having an affair with her husband. About this time, Howard and Wyre separated. After confirming her suspicions, Howard reported the affair to her therapist who in turn relayed this information to VanBrunt's immediate supervisor. On March 15, 1990, the supervisor gave VanBrunt a "verbal reprimand" that her behavior "violated the professional ethics outlined" for OGC employees and directed VanBrunt to "refrain from having contact with the designated client while at work." Despite this warning, VanBrunt continued her adulterous relationship with Wyre. On March 27, 1990, the supervisor gave VanBrunt a written warning which said:

> your continued contact with this client is unacceptable and is affecting the effectiveness and reputation of Ozark Guidance

Center. ... In the event that it is determined that you are continuing to associate with this client, Ozark Guidance Center will terminate your employment.

On June 12, 1990, Howard notified OGC that VanBrunt was continuing her sexual relationship with Wyre in violation of OGC's verbal warning and written reprimand. Instead of firing her as threatened, OGC suspended VanBrunt with pay for six days, transferred her to another OGC location, and again instructed her to end her relationship with Wyre.

Howard and Wyre were divorced on October 18, 1990. It is not apparent when the relationship between Wyre and VanBrunt ended. However, on June 29, 1992 VanBrunt informed OGC that her relationship with Mr. Wyre would no longer be a problem because she had recently accepted a marriage proposal from Wyre's brother. It is also unclear when, if ever, Howard ceased attending her therapy sessions at OGC. According to her complaint, Howard continued her therapy until June 12, 1991. However, in her answers to OGC's interrogatories, Howard declared that as of December 3, 1993, she was "still under treatment of a case manager there at Ozark Guidance Center, whom I see once a week."

On June 7, 1993, Howard filed a complaint in the Washington County Circuit Court alleging that OGC was negligent because it failed to take adequate measures to end the affair, declined to terminate VanBrunt, and did not implement a company policy addressing romantic relationships between clients and non-professional staff members. Howard's complaint did not specifically allege "medical malpractice" or refer to the medical malpractice statute.

OGC filed a motion for summary judgment in which it alleged that the action was barred by the three-year statute of limitations for negligence actions. Howard responded by asserting that her action was one for medical malpractice, not negligence, and thus the continuous-treatment doctrine was applicable to toll the limitations period. The trial court found that Howard's lawsuit was barred by the three-year statute of limitations for negligence actions and dismissed the case with prejudice.

Howard's sole argument on appeal is that the continuous-treatment doctrine applies to her case, and thus her action was improperly dismissed by the trial judge. In 1988, this court first

recognized the "continuous-treatment doctrine," which tolls the two-year statute of limitations for medical malpractice actions until the medical treatment is discontinued. *Lane* v. *Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988). However, before we can reach the issue of the applicability of the continuous-treatment doctrine, we must first decide whether Howard's cause of action is one for negligence or medical malpractice.

All negligent acts that occur at a doctor's office do not give rise to an action for medical malpractice. For example, a person who slips and falls in a doctor's office might have a cause of action based on premises liability, not medical malpractice. In order for the medical-malpractice act to apply, the negligent act must cause a "medical injury" which is defined as:

> any adverse consequences arising out of or sustained *in the course of the professional services being rendered by a medical care provider*, whether resulting from negligence, error, or omission *in the performance of such services....*

Ark. Code Ann. § 16-114-201(3) (1987) (emphasis supplied). Thus, the initial question to be answered in this case is whether Howard suffered a "medical injury" as defined by the statute.

This court has addressed on several occasions the question of what constitutes a medical injury under the malpractice act. In *Bailey* v. *Rose Care Center*, 307 Ark. 14, 817 S.W.2d 412 (1991), a nursing home patient left the facility unnoticed in his wheelchair and was subsequently struck and killed by a car. We found that the patient's death was an issue of negligent supervision, and not "the result of a doctor's treatment or order," and that the case was thus one of negligence, not malpractice. *Id.*

Likewise in *Brown* v. *St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 (1987), this court reviewed a case of alleged negligent supervision of a patient. In *Brown*, a patient at a alcohol treatment center walked out of an unlocked door onto the roof of the center and jumped or fell to his death. *Id.* Although we held that the failure by the treatment center to provide a safe environment for its patients constituted a "medical injury" under the statute, we reconsidered this holding in *Bailey, supra*, and overruled the *Brown* decision, stating that:

> On reexamination, we conclude that the facts set out in

*Brown* did not fall within the definition of medical injury. ...[T]he circumstances in *Brown* did not involve a PROFESSIONAL SERVICE but instead raised only the question of whether a patient was properly supervised by the health center's staff.

*Bailey,* 307 Ark. at 19, 817 S.W.2d at 414.

■ Three years later, this court again considered the definition of medical injury under the malpractice statute. *Wyatt* v. *St. Paul Fire & Marine Ins. Co.,* 315 Ark. 547, 868 S.W.2d 505 (1994). In *Wyatt,* a hospital nurse told a relative that Wyatt was being tested for AIDS. *Id.* Wyatt sued the nurse and the hospital for malpractice for the failure "to maintain medical confidentiality." *Id.* This court found that "revealing confidential information" did not "fall within our expressed view of what constitutes a medical injury." *Id.* Quoting a New York Supreme Court decision, we explained that:

The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve A MATTER OF MEDICAL SCIENCE OR ART REQUIRING SPECIAL SKILLS not ordinarily possessed by lay persons....

*Id.,* 315 Ark. at 554, 868 S.W.2d at 509. (quoting *Borrillo* v. *Beekman Downtown Hospital,* 537 N.Y.S.2d 219 (N.Y. Sup. Ct. 1989)) (emphasis supplied). Thus, we determined that a breach of the patient-doctor confidentiality was an action in negligence, not malpractice. *Id.*

■ In sum, it is clear from our decisions that in order to be a "medical injury" the injury must be the result of a "professional service," "a doctor's treatment or order," or "a matter of medical science." *Bailey, supra; Wyatt, supra.* Howard's complaint alleges that OGC was negligent in its handling of an employee's relationship with a client. How a medical office supervises its staff is not a matter of "medical science" or the rendition of a "professional service"; consequently, it is not a medical injury as required by the malpractice statute. The trial court therefore correctly applied the three-year statute of limitations for negligence actions in this instance.

Affirmed.