Cathy McQUAY, Sam McQuay, Sue Beebe, Sharion Cantrell, Rachel Keech, Charman Rowe, Dennis Rowe, and Randy Thatch *v.* Randall GUNTHARP, M.D., and Northeast Arkansas Internal Medicine Clinic, d/b/a Pocahontas Family Clinic

98-1428                                              986 S.W.2d 850

Supreme Court of Arkansas
Opinion delivered March 11, 1999

*Hicks Law Firm,* by: *George R. Wise, Jr.,* for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *Lucinda McDaniel,* for appellees.

DONALD L. CORBIN, Justice. This is an outrage case involving allegations against a physician for sexually fondling six female patients. Appellants Cathy and Sam McQuay, Sue Beebe, Sharion Cantrell, Rachel Keech, Charman and Dennis Rowe, and Randy Thatch appeal the judgment of the Randolph County Circuit Court dismissing with prejudice their complaint against Appellees Dr. Randall Guntharp and Northeast Arkansas Internal Medicine Clinic. This is the second appeal of this matter; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). *See McQuay v. Guntharp,* 331 Ark. 466, 963 S.W.2d 583 (1998) (*McQuay I*). For reversal, Appellants argue that the trial court erred in dismissing their complaint on the ground that their claims were based upon medical injuries and were barred by the two-year limitations period for medical malpractice, found in Ark. Code Ann. § 16-114-203 (Supp. 1997). We find merit to Appellants' argument and reverse.

It is undisputed that on separate occasions from November 1993 to January 1995, the six female Appellants were examined by Appellee Dr. Guntharp in his office in Pocahontas. On February 28, 1996, Appellants filed a complaint for the tort of outrage, alleging that Dr. Guntharp had "improperly touched, examined, and otherwise fondled" their breasts during their physical examinations. Additionally, Appellants Sam McQuay and Dennis Rowe alleged a loss of consortium of their wives based upon Dr. Guntharp's outrageous conduct. The trial court initially dismissed the suit with prejudice, finding that Appellants' complaint stated a cause of action for battery, not outrage, and was therefore barred by the one-year statute of limitations for battery. On appeal, this

court concluded that Appellants' complaint contained sufficient facts to support a claim for outrage separate and apart from a claim for battery and was thus timely filed within the three-year limitations period found in Ark. Code Ann. § 16-56-105 (1987). This court held:

> Appellants were patients of Dr. Guntharp. During their physical examinations, he informed them that he needed to check their heart rate or lungs. While using a stethoscope, Dr. Guntharp improperly touched, examined, and fondled Appellants' breasts. Appellants stated that as a result of the trauma of the incident, they have suffered and continue to suffer from extreme mental anguish. Appellants specifically pleaded that the trauma of having a doctor, whom each Appellant had trusted, fondle their breasts in a sexually suggestive manner has caused all of them to be less trusting of physicians in general. Appellants claimed that as a result of these acts, they missed work and should be compensated for lost wages. Appellants claimed further to have sustained medical expenses in the past, and that they may sustain future medical expenses. Appellants Sam McQuay and Dennis Rowe asserted that they have suffered a loss of consortium of their wives as a result of Dr. Guntharp's actions. . . .
>
> The nature of the physician-patient relationship and the nature of the allegations presented by Appellants create the appropriateness of a suit for tort of outrage. A patient entrusts his or her body and sense of dignity to a physician. The patient subjects himself or herself to a loss of this dignity and a loss of privacy by even divulging his or her personal thoughts as to what ails him or her. Looking to the facts alleged in the complaint, it is apparent that these patients were most vulnerable by presenting their bodies to a physician whom they trusted to exercise professionalism in his treatment, only to be taken advantage of by a doctor seeking his own personal gratification.

*McQuay I*, 331 Ark. at 475-76, 963 S.W.2d at 587-88.

The issue now before us is whether a physician's act of fondling a female patient's breasts during a medical examination constitutes a medical injury, as defined in Ark. Code Ann. § 16-114-201(3) (1987), and, therefore, whether the trial court erred in characterizing Appellants' claims as medical injuries. To make

such a determination, we must look to the complaint itself. *McQuay I*, 331 Ark. 466, 963 S.W.2d 583. For the reasons outlined below, we conclude that Appellants did not allege medical injuries.

■ Section 16-114-201(1) of our Medical Malpractice Act provides that an "[a]ction for medical injury" is any action for damages against a medical-care provider, "whether based in tort, contract, or otherwise[.]" Not all negligent acts that occur at a doctor's office give rise to an action for medical malpractice. *Howard v. Ozark Guidance Ctr.*, 326 Ark. 224, 930 S.W.2d 341 (1996). Rather, to sustain an action against a medical-care provider for medical malpractice, the plaintiff must have suffered a medical injury. Section 16-114-201(3) provides that "medical injury" or "injury" means:

> [A]ny adverse consequences *arising out of or sustained in the course of the professional services being rendered by a medical care provider,* whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services. [Emphasis added.]

■ Although the particular issue presented in this case is one of first impression, this court has, on several occasions, discussed the meaning of "medical injury" under section 16-114-201(3). In *Bailey v. Rose Care Center*, 307 Ark. 14, 817 S.W.2d 412 (1991), the evidence showed that John Dowdy, an eighty-one-year-old patient living at the Rose Care Center, left the nursing home unnoticed in his wheelchair and was subsequently struck by a pickup truck and killed. The trial court had instructed the jury under AMI 1501, which applies to cases involving medical injuries. This court held that such instruction was error:

> In order to establish, under AMI 1501 and § 16-114-206, that the medical care provider failed to act in accordance with the

degree of skill and learning possessed by other members of the profession in good standing, the plaintiff must have expert testimony. *See Sexton v. St. Paul Fire & Marine Ins. Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982). On the other hand, AMI 1505 requires only that the plaintiff show that the hospital, sanitarium, or nursing home did not use ordinary care to furnish a patient the care and attention reasonably required by his medical or physical condition. As noted under AMI 303, above, it is for the jury to decide how a reasonably careful person would act under these circumstances. Expert testimony is only required when the asserted negligence does not lie within the jury's comprehension; when the applicable standard of care is not a matter of common knowledge; and when the jury must have the assistance of expert witnesses to decide the issue of negligence. *Prater v. St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987).

307 Ark. at 18, 817 S.W.2d at 414. Concluding that expert testimony was not necessary, this court held:

> In sum, Mr. Dowdy was under a doctor's care while he was in the nursing home, *but his death was not the result of a doctor's treatment or order.* Instead, the question is whether Mr. Dowdy was properly supervised by the one LPN and five nurse's aides on duty that night. The answer to this question merely requires the jury to decide whether the nursing home used ordinary care in furnishing Mr. Dowdy the care and attention reasonably required by his mental and physical condition.

*Id.* at 19, 817 S.W.2d at 414 (emphasis added). In so holding, this court overruled its previous decision in *Brown v. St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 (1987).

In *Brown*, this court held that a patient at an alcohol-treatment center who walked out of an unlocked door onto the roof of the center and jumped or fell to his death had a cause of action for medical injury. In reversing its position in *Brown*, the *Bailey* court reasoned that "the circumstances in *Brown* did not involve a professional service but instead raised only the question of whether a patient was properly supervised by the health center's staff." 307 Ark. at 19, 817 S.W.2d at 414. The *Bailey* court also distinguished the earlier holding in *Sexton v. St. Paul Fire & Marine Ins.*

*Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982), where an elderly patient died from injuries sustained after he fell out of his hospital bed. The question there was whether the hospital's failure to place a safety-restraint vest on a patient fit within the definition of a medical injury. The facts demonstrated that the patient had fallen out of his bed before, and that a doctor had authorized a safety-restraint vest for him; however, use of the vest was left to the nurses' discretion. This court determined that the use of the vest was a professional service, given that only a doctor could authorize it, and thus the action was one for medical injury.

In *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994), this court held that the act of a nurse revealing confidential information concerning the appellant's test for AIDS was not a medical injury. Relying on the decision in *Bailey*, 307 Ark. 14, 817 S.W.2d 412, this court concluded that "it is clear that the actions of [the nurse] in revealing confidential information she acquired at work did not fall within our expressed view of what constitutes a medical injury." *Id.* at 554, 868 S.W.2d at 509. This court also relied on the New York case of *Tighe v. Ginsberg*, 540 N.Y.S.2d 99 (N.Y. App. Div. 1989), for the idea that "[a]lthough in a general sense a doctor furnishes medical care to patients, clearly not every act of negligence toward a patient constitutes medical malpractice." *Wyatt*, 315 Ark. at 554, 868 S.W.2d at 509 (quoting *Tighe*, 540 N.Y.S.2d at 100). This court also relied on the following language from another New York decision:

> The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of [the] common everyday experience of the trier of facts. *Where the matter requires the consideration of the professional skill and knowledge of the practitioner of the medical facility, the more specialized theory of medical malpractice applies.*

*Id.* (emphasis added) (quoting *Borrillo v. Beekman Downtown Hosp.*, 537 N.Y.S.2d 219, 220 (N.Y. App. Div. 1989) (quoting *Miller v.*

*Albany Med. Ctr. Hosp.*, 464 N.Y.S.2d 297, 298-99 (1983))). In *Beekman*, the New York court concluded that because the allegations contained in the complaint did not involve diagnosis, treatment, or the failure to follow a physician's instructions, the action was one of ordinary negligence, not medical malpractice.

■ In *Howard*, 326 Ark. 224, 930 S.W.2d 341, the plaintiff, a patient at the Ozark Guidance Center, sued the facility for negligently allowing an affair to continue between its receptionist and the plaintiff's husband. The issue of whether the plaintiff had suffered a medical injury arose within the context of her assertion that the trial court erred in not applying the continuous-treatment doctrine to extend the applicable statute of limitations. After surveying the foregoing Arkansas decisions, this court concluded that the plaintiff had not suffered a medical injury, reasoning that "it is clear from our decisions that in order to be a 'medical injury' the injury must be the result of a 'professional service,' 'a doctor's treatment or order,' or 'a matter of medical science.'" *Id.* at 228, 930 S.W.2d at 343 (citing *Wyatt*, 315 Ark. 547, 868 S.W.2d 505; *Bailey*, 307 Ark. 14, 817 S.W.2d 412).

■ ■ Here, Appellants alleged that they were patients of Dr. Guntharp's and that they were physically examined by him. They alleged that during these physical examinations, Dr. Guntharp informed them that he needed to check their heart rate or lungs. They alleged further that it was "[u]nder the pretext of checking the patient's heart rate or lungs with a stethoscope" that Dr. Guntharp improperly touched, examined, and otherwise fondled their breasts. When we review a trial court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true, viewing them in a light most favorable to the appellant. *Efurd v. Hackler*, 335 Ark. 267, 983 S.W.2d 386 (1998). Under the facts and circumstances alleged here, Dr. Guntharp's actions of improperly touching or fondling Appellants' breasts do not constitute the rendering of professional services, despite the fact that the touching occurred during a physical examination at the physician's office.

■    Accordingly, we conclude that the complaint properly states a cause of action for outrage, as the act of a physician fondling a woman's breasts during an examination, if proven, does not fall within the parameters of "professional services being rendered by a medical care provider" under section 16-114-201(3). As such, the complaint was timely filed within the three-year limitations period in section 16-56-105. We thus reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

GLAZE, J., not participating.