**Freda R. SHEPHERD, Plaintiff**

v.

**BAPTIST HEALTH; Johnson & Johnson; Ethicon, Inc.; and John Does 1–20, Defendants.**

**No. 4:12CV00662 JLH.**

United States District Court,
E.D. Arkansas,
Western Division.

Nov. 30, 2012.

Clayton A. Clark, Scott A. Love, W. Michael Moreland, Clark Love & Hutson, Houston, TX, Doralee Idleman Chandler, Gail O. Matthews, Matthews, Sanders & Sayes, Little Rock, AR, for Plaintiff.

Lyn Peeples Pruitt, Adria W. Conklin, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, for Defendants.

*OPINION AND ORDER*

J. LEON HOLMES, District Judge.

On February 28, 2007, a pelvic mesh medical device was surgically implanted into Freda R. Shepherd at Baptist Health Medical Center in Little Rock. The mesh device was manufactured and distributed by Johnson & Johnson and Ethicon, Inc. On September 11, 2012, Shepherd commenced an action against Baptist Health,[1] Johnson, and Ethicon in the Circuit Court of Pulaski County, Arkansas, alleging that she suffers severe and permanent pain due to the erosion, collapse, and ultimate failure of the mesh device. Shepherd claims that Baptist Health was negligent and grossly negligent, and that it is strictly liable for supplying a defective product. One month later, Baptist Health filed a motion to dismiss, arguing that Shepherd's claims against it are barred by the statute of limitations. Before the circuit court could rule on Baptist Health's motion, Johnson and Ethicon removed the action to this Court, arguing that Baptist Health was fraudulently joined and that federal jurisdiction was therefore proper under 28 U.S.C. § 1332. Johnson and Ethicon have now moved the Court to stay all proceedings pending a decision by the Judicial Panel on Multidistrict Litigation on whether to transfer the action. Shepherd, in turn, has filed a motion to remand to state court, arguing that diversity jurisdiction is lacking. For the following reasons, the Court grants Baptist Health's motion to dismiss, denies Shepherd's motion to remand, and then grants Johnson and Ethicon's motion for stay.

**I.**

On November 6, 2012, the Multidistrict Panel entered an order conditionally transferring this action to the Honorable Joseph

---

1. Baptist Health is the corporate entity that owns Baptist Health Medical Center.

R. Goodwin in the Southern District of West Virginia as part of Multidistrict Litigation (MDL) No. 2327. MDL No. 2327, Document # 673; *see also* 28 U.S.C. § 1407; *In re Am. Med. Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F.Supp.2d 1359 (J.P.M.L.2012) (transferring certain listed actions to MDL Nos. 2325–2327); Document # 14, Exhibit 1 (Ethicon's notice of potential tag-along to MDL No. 2327). Johnson and Ethicon ask this Court to stay all activity in the present action—including deciding on the motion to remand—while the Multidistrict Panel makes a final determination as to whether the case should be transferred. Shepherd opposes the motion to stay and argues that the Court should first determine whether the action should be remanded based on a lack of diversity jurisdiction. Baptist Health has not responded to the motion to stay.

When a motion to transfer or a notice of tag-along is pending before a Multidistrict Panel, the Court can choose to withhold any rulings on the action before it, including a decision on jurisdiction. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir.1990) ("[T]he MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the transferee court." (citation omitted)). However, "[t]he mere pendency of a motion to transfer before the Multidistrict Panel does not ... limit [the Court's] ability to act on matters properly before it." *General Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir.1979); *see also* Rules of Pro-

cedure of the Judicial Panel on Multidistrict Litigation, 147 F.R.D. 589, 601 (J.P.M.L.1993) ("The pendency of a ... conditional transfer order ... before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."); *Kohl v. Am. Home Products Corp.*, 78 F.Supp.2d 885, 888 (W.D.Ark. 1999) ("[A] motion to transfer a case to MDL does not automatically stay discovery, postpone rulings on pending motions, or generally suspend further proceedings in the court in which the action was filed.").[2] In deciding between these options, the Court can consider, among other things, the universality of the issues and "whether it would serve judicial economy to have the questions resolved by a single court." *Kohl*, 78 F.Supp.2d at 888.

Here, "judicial economy and the objectives of the MDL will be furthered by this Court's consideration of the pending Motion to Remand, which involves fraudulent joinder issues turning entirely on questions of Arkansas law." *Hobbs v. Wyeth, Inc.*, 3:04–CV–0176, 2004 WL 6005569, at *2 (E.D.Ark. July 13, 2004). The defendants themselves observe that the primary purposes of transfer and consolidation are "to eliminate duplicative discovery; prevent inconsistent pretrial rulings ...; and conserve the resources of the parties, their counsel, and the judiciary." *In re Cal. Retail Natural Gas & Elec. Antitrust Li-*

---

**2.** The parties cite cases disagreeing as to which of these two options is the preferred approach among courts. *Compare Craft v. United Ins. Co. of Am.*, No. 4:01–CV–339, 2002 WL 32509283, at *1 (S.D.Miss. Jan. 17, 2002) ("[T]he most prevalent result ... is that motions to remand are [to] be considered prior to disposing of motions to stay pending MDL transfer."), *with Jackson v. Johnson & Johnson, Inc.*, No. 01–2113, 2001 WL

34048067, at *6 (W.D.Tenn. Apr. 3, 2001) ("The general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [Multidistrict Panel] has transferred the case...."). The Court need not decide which option is preferred, as all that is necessary here is the determination that both possibilities are within the Court's discretion.

*tig.,* 150 F.Supp.2d 1383, 1384 (J.P.M.L. 2001). Deciding the motion to remand before granting a stay will not cause any duplicative discovery, nor will it create inconsistent pretrial rulings, as the issues presented are unique to Arkansas. *See Kohl,* 78 F.Supp.2d at 888 ("[U]niformity . . . will not be compromised by deciding a unique question wholly dependent on the law of the State of Arkansas."). Nor will resources be unnecessarily wasted, as the issues have been fully briefed, and the motions are ripe for decision. For all these reasons, the Court will decide whether Baptist Health should be dismissed and the action remanded.

## II.

The three named defendants contend that Shepherd's claims against Baptist Health are barred by the statute of limitations in Arkansas's Medical Malpractice Act. The limitations provision in the Act states:

> (a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.
>
> (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

Ark. Code Ann. § 16–114–203. The Act defines the following key terms:

> (1) "Action for medical injury" means any action against a medical care provider, whether based in tort, contract, or otherwise, to recover damages on account of medical injury;

> (2) "Medical care provider" means a . . . hospital . . .
>
> (3) "Medical injury" or "injury" means any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

*Id.* § 16–114–201. In the defendants' view, all of Shepherd's claims against Baptist Health are "actions for medical injury" as defined by the Act because she only alleges "adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider." Thus, the defendants argue, Shepherd's claims are barred by the Act because she waited more than five years to commence an action.

For case law support, the defendants rely on *Adams v. Arthur,* 333 Ark. 53, 969 S.W.2d 598 (1998). In *Adams,* several patients had an experimental spacer implanted in their spines during surgery. These patients subsequently sued the hospitals where the surgeries were performed, alleging claims for negligence and strict liability, among other things. The hospitals then moved for summary judgment, arguing that the claims against them were barred by the Medical Malpractice Act's statute of limitations. The trial court agreed and granted summary judgment, after which the defendants appealed to the Arkansas Supreme Court. *Id.* at 61, 969

S.W.2d at 601–02. In analyzing the limitations issue, the Arkansas Supreme Court held:

> In the present cases, where the appellants attempt to hold the hospitals liable for adverse consequences arising from an allegedly defective product supplied in the course of rendering a surgical procedure, the appellants' alleged injuries fall within the definition of medical injury, and the appellants' cause of action based on strict or product liability is an action for medical injury as that term is used in the Medical Malpractice Act.

*Id.* at 86–87, 969 S.W.2d at 615. The court acknowledged that this created a potential conflict because, in addition to the Medical Malpractice Act's statute, several other statutes of limitation arguably applied to the claims against the hospital, including the Product Liability Act statute. *Id.* at 86–88, 969 S.W.2d at 614–16. After examining this conundrum, the court concluded that, "in light of the all-inclusive language used by the General Assembly in defining an action for medical injury[,] ... the Medical Malpractice Act's two-year statute of limitations governs the appellants' product-liability claims brought against the hospitals." *Id.* at 88, 969 S.W.2d at 616. All of the plaintiffs' claims—negligence and product liability included—were dismissed based upon the same rationale. *See id.* at 61–62, 969 S.W.2d at 602 ("The trial court ... granted summary judgment to the doctors and hospitals finding that *all claims were barred* by the two-year limitations period for medical injury found in the Medical Malpractice Act.... As to the appellee hospitals, *we affirm* the grant of summary judgment in all cases." (emphases added)).

The facts in *Adams* are substantially similar to the facts in the present action; in both, a medical device was implanted into a patient at a hospital, the device allegedly failed, and the patient sued the hospital on various claims including negligence and strict liability. In *Adams,* the Supreme Court of Arkansas held that the two-year statute of limitations from the Medical Malpractice Act applied; the same result must obtain here.

■■■ Shepherd admits that, pursuant to *Adams,* the two-year period of limitations in the Medical Malpractice Act governs. She argues, nevertheless, based on the Arkansas Supreme Court's decision in *Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684 (1999), that her claims against Baptist Health survive because of the "discovery rule," under which the statute of limitations begins to run when the plaintiff knew or reasonably should have discovered the underlying injury and its causation.[3] Shepherd's reliance on *Martin* is misplaced. While the Arkansas Supreme Court in *Martin* acknowledged the existence of a discovery rule in a medical implantation case, the court's holding only applied to the statute of limitations found in the Product Liability Act, not the Medical Malpractice Act. *See id.* at 159, 3 S.W.3d at 690 ("We hold that in product liability cases, the statute of limitations under [Ark. Code Ann.] § 16–116–103 does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered.").[4] In short, *Martin*

---

3. Shepherd asserts in a brief that she did not begin to discover the mesh device's harm until she saw a television program about its hazards in August 2011. *See* Document # 19, at 5.

4. Furthermore, that specific part of the *Martin* opinion concerned claims against the device's manufacturer, not the hospital involved. *See id.* at 160, 3 S.W.3d at 691 ("We conclude that the Martins have stated a cause of action for product liability against Calcitek.").

construed a different statute of limitations than the one that governs here. Here, per *Adams,* the Medical Malpractice Act's statute of limitations controls. Under the Medical Malpractice Act, "[t]he date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." Ark. Code Ann. § 16–114–203(b); *see also Kohl,* 78 F.Supp.2d at 897 (rejecting argument that, under the Medical Malpractice Act, the limitations period began to run only when the nature of the injury was revealed). According to Shepherd's complaint, the wrongful act occurred on or before February 28, 2007, when she underwent surgery, so her cause of action for medical malpractice accrued on that date. Because Shepherd's action against Baptist Health was not commenced within two years of that date, it is barred.

Shepherd argues, in the alternative, that her negligence and gross negligence claims should survive because the Medical Malpractice Act does not cover them. *See Bedell v. Williams,* 386 S.W.3d 493, 2012 Ark. 75 (2012), *and Health Facilities Mgmt. Corp. v. Hughes,* 365 Ark. 237, 227 S.W.3d 910 (2006) (distinguishing between a medical-malpractice claim and an ordinary negligence claim). The defendants admit that it is possible in Arkansas to state an ordinary negligence claim against a hospital, as opposed to a negligence claim covered by the Medical Malpractice Act, but argue that Shepherd has not actually done so.

■ For a claim to be governed by the Medical Malpractice Act, the alleged injury must be a "medical injury." Ark. Code Ann. § 16–114–202. "[T]o constitute a 'medical injury' under the Medical Mal-

practice Act, the injury must be the result of (1) a professional service, (2) a doctor's treatment or order, or (3) a matter of medical science." *Paulino v. QHG of Springdale, Inc.,* 2012 Ark. 55, at *9–10, 386 S.W.3d 462 (2012) (citing *Howard v. Ozark Guidance Ctr.,* 326 Ark. 224, 228, 930 S.W.2d 341, 343 (1996)). Thus, an injury flowing from a clinic's mishandling of an employee's sexual relationship with a client, a hospital nurse's failure to maintain patient confidentiality, a nursing home's failure to supervise a patient properly when the patient escaped and was killed by a motor vehicle, or a physician's fondling of a patient during a medical exam does not constitute a "medical injury." *Howard,* 326 Ark. at 224, 930 S.W.2d at 341; *Paulino,* 2012 Ark. 55, at *8, 386 S.W.3d 462.

■ Shepherd's negligence allegation is that Baptist Health "failed to give proper warnings and instructions as to the known risks and benefits associated with the use of the Johnson and Johnson [mesh device]." Document # 2, at 3. Assuming that a duty to warn falls on the hospital,[5] Shepherd's negligence claim is a medical malpractice claim inasmuch as her injury resulted from professional services rendered by a medical care provider and therefore is a medical injury. *See Wyatt v. St. Paul Fire & Marine Ins. Co.,* 315 Ark. 547, 554, 868 S.W.2d 505, 509 (1994) ("Where the matter requires the consideration of the professional skill and knowledge of the practitioner of the medical facility, the more specialized theory of medical malpractice applies." (quoting *Borrillo v. Beekman Downtown Hosp.,* 146 A.D.2d 734, 537 N.Y.S.2d 219 (1989))). Further-

---

5. This issue has not been decided. *Cf. Kowalski v. Rose Drugs of Dardanelle, Inc.,* 2011 Ark. 44, at *17–18, 378 S.W.3d 109, 120–21 (2011) (under Arkansas's learned intermediary rule, the duty to warn of medication dangers falls on the prescribing physician, not the pharmacist); *Ellis v. C.R. Bard, Inc.,* 311 F.3d 1272, 1283 (11th Cir.2002) (under Georgia's learned intermediary rule, the duty to warn of dangers of a prescription medical device may fall on a hospital as well as a doctor).

more, as has been explained, the Arkansas Supreme Court addressed a substantially similar situation in *Adams* and found that the Medical Malpractice Act applies. *See* 333 Ark. 53 at 86–87, 969 S.W.2d at 615 ("[W]here the appellants attempt to hold the hospitals liable for adverse consequences arising from an allegedly defective product supplied in the course of rendering a surgical procedure, the appellants' alleged injuries fall within the definition of medical injury...."). All of Shepherd's claims against Baptist Health fall under the Medical Malpractice Act and are therefore barred.

### III.

In the absence of federal question jurisdiction, federal courts may exercise subject matter jurisdiction only when the opposing parties are completely diverse in their citizenship. *See* 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir.2010) (citation omitted). An action commenced in state court can be removed on diversity jurisdiction grounds only if none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

It is undisputed that Shepherd and Baptist Health are Arkansas citizens, and that Johnson and Ethicon are New Jersey citizens.[6] Johnson and Ethicon, however, contend that the Court should find that Baptist Health was fraudulently joined, which would give this Court diversity jurisdiction.[7]

"[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (2011) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152, 34 S.Ct. 278, 280, 58 L.Ed. 544 (1914)). The burden of demonstrating fraudulent joinder is a heavy one, and it is on the defendant. *See Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir.2012); *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir.2003). To meet this burden, the defendant must show that there is no "reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir.2010) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003)). Thus, that Shepherd's claims against Baptist Health are dismissed does not resolve the question of fraudulent joinder because a defendant who alleges fraudulent joinder must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Knudson*, 634 F.3d at 980. All "ambiguities in state law are to be resolved in favor of [the] plaintiff." *Kohl*, 78 F.Supp.2d at 889. It is widely accepted "that a statute of limitations defense is properly considered in connection with a fraudulent joinder inquiry." *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir.2009); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir.2009).

Here, there is no reasonable basis for predicting that Arkansas law might impose liability on Baptist Health in this action. First, as explained above, the Ar-

---

6. The citizenship of John Does 1–20 is irrelevant for diversity jurisdiction purposes. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

7. The parties do not dispute that the amount in controversy has been met. *See* 28 U.S.C. § 1332(a).

kansas Supreme Court has held, on substantially similar facts, that claims against a hospital for supplying a defective product for surgery fall within the Medical Malpractice Act. *See Adams,* 333 Ark. 53, 969 S.W.2d 598. Second, the Medical Malpractice Act provides that the "date of the accrual of the cause of action shall be the date of the wrongful act complained of *and no other time.*" Ark. Code Ann. § 16–114–203(b) (emphasis added). Third, while the Medical Malpractice Act includes a narrow discovery-rule exception, that provision is not broad enough to cover the current scenario. *See id.* ("[W]here the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.").[8] Fourth, the Arkansas Supreme Court in *Martin* quoted and adopted the Eighth Circuit's observation that the statute of limitations in the Product Liability Act "contrasts sharply with the wording of the two-year limitations period for medical malpractice, which begins at 'the date of the wrongful act complained of, *and no other time.*'" 339 Ark. at 157–58, 3 S.W.3d at 689 (emphasis in original) (quoting *Mulligan v. Lederle Labs.,* 786 F.2d 859, 862 (8th Cir.1986)). Thus, the primary case relied upon by Shepherd stands for the proposition that the Medical Malpractice Act does not include the broad discovery rule applied to the Product Liability Act. Fifth, there is no foundation for Shepherd's argument that her claims against Baptist Health are claims for ordinary negligence as distinct

from claims for medical injury under the Medical Malpractice Act. Finally, even if Baptist Health's alleged wrongdoing did qualify as ordinary negligence, Shepherd provides no authority for her contention that the discovery rule would therefore apply. In *Martin,* the Arkansas Supreme Court stated that "[i]t is well settled that the statute [of limitations] in negligence cases begins to run from the date the negligent act is committed." 339 Ark. at 157, 3 S.W.3d at 688. Thus, even if Shepherd's claims against Baptist Health were based on ordinary negligence, they still could not survive because she waited more than five years to file suit. *See Grand Valley Ridge, LLC v. Metro. Nat'l Bank,* 2012 Ark. 121, at *18, 388 S.W.3d 24 (2012) ("[A] three-year statute of limitations applies to tort actions. The statute begins to run when the negligent act occurred." (citing Ark. Code Ann. § 16–56–105)).

In summary, there is no reasonable basis for predicting that Arkansas law might impose liability on Baptist Health, which means that Baptist Health was fraudulently joined. Because Shepherd and the two remaining defendants are completely diverse in their citizenship, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. The motion to remand is denied.

## IV.

█ The Court must now determine whether to stay any further activity in this action pending the Multidistrict Panel's decision on transfer. In a similar case, the late, great Judge Franklin Waters concluded: "While we believe the prudent course is to decide the motion to remand, we

---

8. Notably, Shepherd never argues that this discovery-rule exception applies to her case. Even if it did apply, however, Shepherd's suit still would be barred because she has admitted to waiting more than a year after discov-

ery to file. *Compare* Document # 2 (Shepherd complaint filed Sept. 11, 2012), *with* Document # 19, at 5 (Shepherd alleges that discovery occurred in August 2011).

agree with defendants that any further proceedings should be stayed given the entry of the conditional order of transfer. Simultaneously with the entry of the order denying the motion to remand, we will grant defendants' motion to stay all further proceedings." *Kohl,* 78 F.Supp.2d at 888. We will follow Judge Waters.

## CONCLUSION

For the foregoing reasons, Baptist Health's motion to dismiss is GRANTED, and Shepherd's motion to remand is DE-NIED. Documents # 4 and # 18. Having granted Baptist Health's motion to dismiss and denied Shepherd's motion to remand, the motion for stay is GRANTED. Document # 13. This action is hereby stayed pending a decision from the Judicial Panel on Multidistrict Litigation.

